## MOORE v. SHOEMAKER.

### EASEMENTS; DIVISION WALLS.

1. Where several houses belonging to the same owner are built together, so that each requires the mutual support of the neighboring house, and the owner parts with one of the houses, the right to such mutual support is not thereby lost; the legal presumption being that the owner reserves to himself such right, and at the same time grants to the new owner such right.

2. But in such case the right to mutual easement or lateral support exists only so long as the wall continues to be sufficient for the purpose of mutual support, and the buildings remain in a condition to require the support. If the buildings be torn down or destroyed by fire or otherwise, and be not at once restored, the right of mutual support will cease, and the parties may then assert their unqualified title to the division line.

No. 595. Submitted November 19, 1896. Decided January 4, 1897.

HEARING on an appeal by the complainants from a decree fixing the rights of the respective parties in a suit in equity to quiet title to certain land.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. J. H. Ralston* and *Mr. A. S. Worthington* for the appellants:

The houses owned respectively by the appellants and appellee were constructed by a common owner, the south house being first conveyed to the predecessor in title of the appellants. It would seem from the facts that the desire of McCutcheon, who constructed these houses, must have been to convey the south house to the middle of the partition wall of appellants' predecessor. This would appear to be more reasonable than to suppose that McCutcheon, after having constructed two houses, with a partition wall, intended to convey to one a part of a house and to another a house and a part. This seems therefore a case where no stress should

be laid on boundary lines given in the deeds, they not being in conformity with the facts shown upon the ground.

For more than thirty years the plaintiffs and their predecessors in interest have held open, uninterrupted, continuous, hostile, and adverse possession, exercising all the rights of owners over the land as to which they are seeking a decree. From this a grant to them is presumed.

The appellants further contend that the south wall of the defendant's houses, even if built entirely upon the ground of the appellee, is to be considered a partition wall and upon this point they refer to *Brown* v. *Werner*, 40 Md., p. 15.

It was contended in the court below, on behalf of the appellee, that the walls 2–3 and 3–4, originally considered as party walls, could no longer maintain their character, for the reason that they had been torn down for the purpose of constructing another wall on the same property, and that said party wall having been destroyed, the possession of the plaintiffs was to be relegated to the ground specifically described in the deeds under which the plaintiffs derived title. In opposition to this contention we refer to the following cases: *Putzell* v. *Drovers' & Mechanics' National Bank*, 78 Md. 349; *Gettwerth* v. *Hedden*, 30 La. Ann. Pt. 1, 30; *Cubitt* v. *Porter*, 2 M. & R. 261; 8 B. & C. 257; *Standard Bank of B. S. A.*, 9 Ch. D. 68; 47 L. J. Ch. 554; 38 Lt. 172; 26 W. R. 492; *Fluger* v. *Hocken*, 1 F. & F. 142.

But we go further and maintain that under the admitted facts in this case the court will conclusively presume a grant to the plaintiffs in fee simple of the land lying between the south half of the lot in question and the middle of the partition wall. And as the evidence shows that the dividing fence in the rear of the buildings was a prolongation of the line of the wall, the same principle would give to the plaintiffs the land south of the fence.

The clear and able discussion of this question by Mr. Justice James, in *Neale* v. *Lee*, 19 D. C. 5, is an authority directly in point in this jurisdiction, and we adopt the

opinion in that case as a complete brief for the appellants in this case. See also 2 Herman on Estoppel, Secs. 1129 to 1135, also Sec. 1138; *Racine* v. *Emerson*, 85 Wis. 80.

*Mr. J. A. Maedel, Mr. Henry P. Blair* and *Mr. Henry Wise Garnett* for the appellee:

1. Whatever rights to the use of the dividing wall passed to Baylis from McCutcheon, those rights were not only created but also defined and limited by the terms of the deed, and they cannot be extended beyond the plain language or clear intent of .said deed. *Evans* v. *Dana*, 7 R. I. 311; *Atkins* v. *Bordman*, 20 Pick. 291–302.

During the time that both houses were owned by McCutcheon, no easement could exist in favor of house No. 1330. *Butterworth* v. *Crawford*, 46 N. Y. 349; *Carbery* v. *Willis*, 7 Allen, 364; *May* v. *Smith*, 3 Mack. 58; *Young* v. *Bethune*, 14 Mass. 54.

Even if the deed to Baylis should be held to grant an easement in the use of the dividing wall, yet an easement granted for a particular purpose ceases when that purpose no longer exists. *Pierce* v. *Dyer*, 109 Mass. 374–376; *National G. M. Co.* v. *Donald*, 4 Hurlst. & Norman (Exch. 8). When the house is destroyed, but the party wall remains, yet the easement in the wall ceases. *Hoffman* v. *Kuhn*, 57 Miss. 746; *Sherred* v. *Cisco*, 4 Sandf. (N. Y.) 480; *Hearth* v. *Kruger*, 56 Superior Ct. (N. Y.) 390.

An easement is a right which may be extinguished or destroyed. Washburn on Easements, 701 (*535); *Hancock* v. *Wentworth*, 5 Metc. 446–451; 3 Mackey, 55; 1 Rolle Abr. 934 and 935. In cases of conflict between the dominant and the servient tenement the latter is more favorably considered than the former. *Glenn* v. *Davis*, 35 Md. 208–218,

2. Before easements can mature into rights there must have been an adverse, uninterrupted use for twenty years, with knowledge and acquiescence of the owner. Washburn, Easements, *86; *Sargent* v. *Ballard*, 9 Pick. 251–255;

*Cooper* v. *Smith*, 9 S. & R. 26–32; *Daniel* v. *North*, 11 East. 372–375; *Scott* v. *Bentel*, 23 Gratt. 1–6, 7; *Hannefin* v. *Blake*, 102 Mass. 297. The burden of proof is on the complainant. Washburn, Easements, *86; 2 Greenl. Evid., Sec. 539; *Amer. Co.* v. *Bradford*, 27 Cal. 366.

The use must have been adverse. If it originated by mistake or license, or in any manner which does not indicate the assertion of a right, the enjoyment is not adverse. *Mitchell* v. *Park*, 26 Ind. 354; *Colvin* v. *Burnet*, 17 Wend. 564. It is well settled law that the possession, in order that it may bar the recovery, must be continuous, uninterrupted, open, notorious, actual, exclusive and adverse. *Ward* v. *Cochran*, 150 U. S. 597, 606–608; *Armstrong* v. *Morrill*, 81 U. S. 120.

The principle upon which the operation of the statute of limitations is predicated is not that the party in whose favor it is invoked has set up an adverse claim for the period specified in the statute, but that such adverse claim is accompanied by such invasion of the rights of the opposite party as to give him a cause of action, which, having failed to prosecute within the time limited by law, he is presumed to have surrendered. *Abell* v. *Harris*, 11 G. & J. 371–2.

3. Could the appellee have maintained an action of ejectment against appellants for their occupation of the wall and intervening strip? If not, then the appellants' possession could not ripen into a title. To maintain ejectment the plaintiff must have the legal title and the immediate right to possession. *Lannay* v. *Wilson*, 30 Md. 536; *Wilson* v. *Inloes*, 11 G. & J. 351. If it be conceded that the appellants had the right to use the wall, it necessarily must follow that they had the right to occupy the intervening strip, so long as their house stood. Consequently such occupation and possession of the strip up to August, 1892, was not such an invasion of the rights of the appellee as to give her a ground for suit.

In a case very much like the case at bar, where an action

of ejectment was brought for the intervening strip, it was held that the easement in the defendant to use the wall carried with it the right to occupy the intervening strip, and that such easement was a bar to plaintiffs' recovery. *Rogers* v. *Sinsheimer*, 50 N. Y. 646–648.

When two are in mixed possession of the same land, one by title and the other by wrong, the law considers him having the title as in possession to the extent of his right. *Cheny* v. *Ringgold*, 2 H. & J. 94; Wood Lim. Act. 543, Sec. 261; *Bellis* v. *Bellis*, 122 Mass. 414–417; 4 Sandf. (N. Y.) 490. A case where the facts are substantially like those in the case at bar, and decided the same way, is *Winn* v. *Abeles*, 35 Kan. 85.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed for the purpose, as we gather from its allegations and prayer for relief, of quieting a claim of title alleged to have been acquired by *adverse possession*, in a slight strip of ground upon which a wall rested, dividing and supporting in part two houses fronting on Seventh street, west, and located on lot 10, square 423, in the city of Washington. The bill was framed, manifestly, to bring the case within the principle laid down by the Supreme Court of the United States in the case of *Sharon* v. *Tucker*, 144 U. S. 533—a case taken up from the Supreme Court of this District. But that case, clearly, has little or no application to the present case.

It appears, both from the bill and the answer, that, in 1845, John McCutcheon was owner of the north 33 feet 4 inches of lot 10, in square 423. Being the owner of such part of the lot, in 1851, he erected upon such part of lot 10 two adjoining brick houses, the front walls of which were located $33\frac{1}{10}$ feet back from the front line of the lot on Seventh street. This is shown by a plat filed with the bill. In 1856, McCutcheon conveyed the south half of this property

that is to say, 16 feet 8 inches front, by *metes and bounds*, to a party named Baylis, through and under whom by mesne conveyances, the plaintiffs claim. And in 1857, McCutcheon conveyed the north half of the 33 feet 4 inches of lot 10, being the remaining 16 feet 8 inches front, by *metes and bounds*, to a party named Utermehle. By subsequent mesne conveyances, this north half part of the 33 feet 4 inches of lot 10, so held by McCutcheon, has been conveyed to the present defendant. The two parts thus separately and differently conveyed by the owner McCutcheon, each had a house thereon at the time of the conveyance by McCutcheon, divided from each other, but mutually supported by a thin division wall of only four inches thick.

Some years after, the owner of the south half or part of the ground, extended the front wall of his house to the front line of the lot, prolonging the division line between the two houses, as shown by the line 1–2 on the plat. And about ten years later the owner of the north half or part of the ground likewise extended his house to the front line of the lot, and in so doing he used the wall already extended by the owner of the south half of the ground so separately conveyed. The house as originally built, and subsequently extended, on the 16 feet 8 inches south portion of the ground conveyed by McCutcheon, and now in the possession of the plaintiffs, was torn down by the plaintiffs, with the purpose of erecting a new building instead thereof, prior to the time of filing the bill in this case. There is no necessity shown for the tearing down and reconstruction of the building on the south side of the wall, except to enable the plaintiffs to enlarge and extend their building. The defendant insists that whatever right of easement the plaintiffs may have had in the wall as means of support to their house while standing, they no longer have any right therein, and that the wall never was a party wall, and cannot be used as such.

The plaintiffs in their bill set out their title, according to

their claim and pretensions, and the facts as they claim them
to exist; and they allege as the result of the preceding alle-
gations of their bill, " that notwithstanding the apparent
legal title to the strip of ground in controversy is out-
standing in the defendant, the plaintiffs are by reason
of the long continued adverse possession of themselves
and their grantors or predecessors in interest, as in their
bill referred to, and by reason of the further fact, now
alleged by plaintiffs, that the possession therein referred to
was taken and held, and the improvements made by the
plaintiffs' predecessors in interest with the full knowledge of
and without objection by defendant or her predecessors in
interest, and assented to by them, the actual, legal and bene-
ficial owners, as against all persons whomsoever of the land
hereinbefore specifically described; but that, inasmuch as the
facts respecting their adverse possession and estoppel of de-
fendant do not appear of record, the apparent legal title, as
shown by the record, is outstanding in the defendant, and
that such apparent title, while thus outstanding, constitutes
a cloud upon plaintiffs' own actual title, and that its effect
is to seriously embarrass them in selling or otherwise dis-
posing thereof, as they are desirous to do, and plaintiffs aver
that they are without remedy," etc.   And they pray that, as
against the defendant, their title to the part of lot 10, square
423, as claimed and possessed by them, may be quieted, and
that they may, as against the defendant, be decreed to be
the sole, legal and beneficial owner thereof.   It is thus made
clear that the object of the bill is to quiet alleged title acquired
by adverse possession, and to have such title judicially de-
clared, notwithstanding the apparent legal record title to the
strip of ground claimed by the plaintiffs is conceded to be
in the defendant.

Upon the pleadings and proof, the court below adjudged
and decreed as to the rights of the respective parties, plaintiffs
and defendant, in the ground upon which the wall rests,
and the wall itself as a division wall; and as to that part of

the wall extended $33\frac{1}{10}$ feet to the front line of the lot on Seventh street, and designated on the plat as the part 1–2, the court declared and established the same " to be a party wall, subject to the rights and easements therein of the said complainants and defendants as the same do now exist." From this part of the decree there has been no appeal, and therefore we are not called upon to review it.   But the court below proceeded by a distinct clause to adjudge and decree "that as to that part of the said lot ten (10), in square four hundred and twenty-three (423), lying north of the centre of the said party wall, and the other part of the said lot lying north and west of a line drawn due west to the rear line of the said lot from a point situate thirty-three and one-tenth $(33\frac{1}{10})$ feet west from the line of Seventh street and one hundred and sixteen (116) feet eight (8) inches south from the north line of said square, the relief prayed for in the said bill of complaint, be, and the same is hereby, denied, and the bill of complaint in regard thereto be, and the same is hereby, dismissed, each party paying their own costs."

It is from this clause or part of the decree that the plaintiffs have appealed.

The plaintiffs insist that there is error in this part of the decree—

1. In not granting the entire relief prayed by the bill

2. In not adjudging the plaintiffs to be the owners in fee of the land covered by their building, and in dismissing the bill of complaint as to a part of such land.

3. In not declaring the walls 2–3 and 3–4 to be party walls, and in not decreeing that the land south of the middle line thereof prolonged to the rear of said lot belongs to the plaintiffs in fee simple.

These alleged errors may be treated together, as embraced under one and the same general consideration.

It is very clear there is no question on the facts of this case, as to rights acquired by mere adverse possession, the one party against the other.   The rights of the parties

depend upon other principles.  And this was manifestly
the view of the court below in·passing the decree.

A party wall, as it is generally defined and understood, is
a wall erected and standing on the line between· two estates
or tenements owned by different persons for the use in com-
mon of both estates or tenements; and the common use of
a wall separating adjoining lots of land belonging to differ-
ent owners is *prima facie* evidence that the wall and the
land upon which it stands belong to the adjoining owners
in equal undivided moieties as tenants in common.   One of
the owners of such wall may take it down, if ·it be done
with the intention of rebuilding it, but it must be with
that intention, and such intention must be executed without
unnecessary delay, and with as little injury to the adjoining
dependent premises as possible.   *Cubitt* v. *Porter*, 8 Barn. &
Cr. 257;  *Standard Bank* v. *Stokes*, 9 Chan. Div. 68;  *Phillips* v.
*Bordman*, 4 Allen, 147.   In this case the original division
wall erected at the time of the building of the two houses
by McCutcheon, the owner of both, was clearly not a party
wall.   It had but few of the constituents of a party wall.
Whether the parties claiming under McCutcheon the differ-
ent parcels of ground and the houses thereon, could have
made this dividing wall, as between the two houses, a party
wall by agreement, or by long acquiescence in a particular
mode of common user thereof could have made it such, are
questions not presented by the bill or the proof in this case.

But there are cases that maintain a principle very nearly
akin to that which applies in the case of a party wall, and
that principle would seem to be applicable in this case. .
That principle arises in cases where an owner builds several
houses in a block and afterwards sells them to different per-
sons, as was done in this case.   If the houses be so con-
structed as to be mutually subservient to, and dependent on
each other, neither of them being capable of standing or
supporting itself, or being enjoyed without the support it
derives from the other, the sale and conveyance of one house

by the owner of both, will not estop him from claiming in respect of the house he retains that support from the house sold which is at the same time afforded in return by the former to the latter tenement. This is the principle of the familiar case of *Richards* v. *Rose*, 9 Exch. 218. In that case it was held, that where several houses belonging to the same owner are built together, so that each requires the mutual support of the neighboring house, and the owner parts with one of the houses, the right to such mutual support is not thereby lost; the legal presumption being, that the owner reserves to himself such right, and, at the same time, grants to the new owner an equal right; and consequently, if the owner parts with several of the houses at different times, the possessors will still enjoy the right to mutual support, the right being wholly independent of the question of the priority of their titles.

In that case, Parke, B., said: "Both these parties derived their titles from the same source. The legal title from which the leases proceeded was vested in the original lessor. It must have been intended by him that each of the tenants of these houses should enjoy his house with all the rights to which it was entitled in its then state and condition; and one of these rights is, that each house should have the support of its neighbor's." And the Chief Baron, in delivering the opinion of the court, said: "We are all of opinion that, where houses have been erected in common by the same owner upon a plat of ground, and therefore necessarily requiring mutual support, there is, either by a presumed grant, or by a presumed reservation, a right to such mutual support, so that the owner who sells one of the houses, as against himself grants such right, and on his own part also reserves the right; and consequently the same mutual dependence of one house upon its neighbor's still remains."

The principle of that case has been adopted in many subsequent cases, and has been incorporated by writers on

real estate law in their text as an established principle. 2 Washb. Real Prop. 333, 334. But in such case, the right to mutual easement or lateral support exists only so long as the wall continues to be sufficient for the purpose of mutual support, and the respective buildings remain in a condition to require the support. If one of the buildings thus supported becomes so dilapidated as to be unsafe and unfit for occupation, the owner may, upon giving reasonable notice to the owner of the adjoining building, take it down, notwithstanding the act of taking down may occasion the destruction of the whole wall, on condition, however, of rebuilding it without delay and without unnecessary injury to the adjoining premises. *Sherred* v. *Cisco,* 4 Sandf. 480; *Partridge* v. *Gilbert,* 15 N. Y. 601. But if the buildings be torn down, or be destroyed by fire, or otherwise, and be not at once restored, the right of mutual support will cease, and the parties may then assert their unqualified title to the division line. · *Sherred* v. *Cisco, supra; Hearth* v. *Kruger,* 56 Sup. Ct. (N. Y.) 390. The implied or presumed grant, or reservation as the case may be, of mutual support of an intervening wall of the buildings as originally erected and sold, is not, therefore, to be construed into a perpetual easement as of a common or party wall, so that after the buildings are torn down or destroyed, the strip of ground upon which the wall was originally erected should be subject to an easement for the support of the wall for other or different buildings, requiring greater and more extensive support.

Upon the case stated in the bill and the proof produced, we are of opinion that the plaintiffs obtained all the relief to which they were entitled; and that there is nothing in that part of the decree from which this appeal is taken that in any respect requires the reversal thereof, or that requires any material modification of such part of the decree. We shall therefore, affirm the part of the decree appealed from; and it is so ordered.

*Part of decree appealed from affirmed, and cause remanded.*