GEORGE L. JEFFERY *vs*. FITZ W. WINTER & another.

Essex. November 10, 1905. — January 3, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Land Court. Practice, Civil*, Appeal. *Deed*, Construction.

A petition to the Land Court, for registration of title, by the owner of a portion of a dwelling house, divided vertically, against the owners of the remaining portion, alleged no boundary on the side next the respondents' lot other than the land of the respondents. The petitioner appealed from the decree of the Land Court to the Superior Court on issues framed by the Land Court under R. L. c. 128, § 13, as amended by St. 1902, c. 458. The issues were framed as follows: "1. Have the respondents any right, title or interest in the real estate claimed by the petitioner? 2. If the respondents have any right, title or interest in the real estate claimed by the petitioner, what is it?" A judge of the Superior Court reported the case for determination by this court on matters of law. It appeared by the record that the parties made conflicting claims in the Land Court in regard to the ownership of a strip of land which depended on the location of the boundary line between their respective properties, and that the judge of the Land Court made findings on this subject. *Held*, that, although the issues might have been framed in better form to present the questions to be answered in the Superior Court, yet, read in connection with the findings of the judge of the Land Court, it appeared that the issues were intended to present to the Superior Court the question of the title to the strip of land in dispute.

The owner of land on which stood a two story and a half wooden dwelling house conveyed "The southerly half of my dwelling-house in G. as the same is divided by the partition from the northerly part of said dwelling-house, together with the southern half of the land adjoining thereto, reserving liberty of a free passage into and out of the cellar by and through the fore cellar doorway, together with all the privileges and appurtenances to the same half house and land any way belonging." The partitions running through the house from east to west on the first and second floors were substantially although not exactly in the same vertical line and divided the house into nearly but not exactly equal parts. They also ran nearly but not exactly in a straight line through the house from front to rear. The partition in the attic was in a straight line dividing the house about equally but was not in a vertical line with the other partitions, being nearer the exact middle of the house. There was no cellar under the rear part of the house. There was a partition in the cellar but its line was very irregular. *Held*, that the deed passed the title to that part of the structure which was south of the line of the partition in each story, that the cellar on each side was appurtenant to the house above, and that the land adjoining the house was intended to be divided by the same general line that divided the house; that the partitions of the first and second stories, running east and west, if in the same vertical line and with the same termini at the front and the rear of the house, should determine the ownership of the adjoining land, or, if it should appear that there was a difference in the termini of the partitions of the first and second stories, the termini of the first story should fix the boundary line of the land. It was

not disputed that there was an easement of a right of mutual support and shelter for the several portions of the house belonging to the respective owners.

If one owning land with a dwelling house on it conveys about one half of the land and house, dividing the house vertically and making the boundary on each floor a partition nearly but not exactly in the centre of the house, the partitions on the different floors not being in the same vertical line, the grantee and the grantor each has an easement to maintain that part of the structure which belongs to him and extends over the land of the other.

Where an appeal has been taken from a decree of the Land Court to the Superior Court on issues framed by the Land Court under R. L. c. 128, § 13, as amended by St. 1902, c. 458, and a judge of the Superior Court reports the case for determination by this court on matters of law, the case after decision by this court goes to the Superior Court, which must determine finally the matters involved in the appeal, and remand the case to the Land Court under § 14 of the same chapter.

PETITION, filed in the Land Court on July 7, 1904, for the registration of the title to two parcels of real estate in Gloucester.

The first parcel to which the petition related was described as follows:

"A parcel of land situated on the western side of Pleasant street, and is bounded northerly by land of Fitz W. and Mary E. Winter; easterly by said Pleasant street; southerly by land of Grafton and Butman and Albert H. French seventy-nine and 25/100 (79.25) feet and by the second parcel of land herein described forty-six and 85/100 (46.85) feet; and westerly by land of Joseph O. Proctor twenty-seven and 92/100 (27.92) feet."

The second parcel sought to be registered was not involved in this controversy.

The petitioner and the respondents own adjoining lots of land on Pleasant Street, in Gloucester. In 1771 the land of the petitioner and that of the respondents formed a single lot of land then owned by one David Ingersoll. At that time there was situated upon the land so owned by him a dwelling house, the southerly portion of which, with the southerly portion of the land, was conveyed by Ingersoll to one James Odell, through whom the petitioner claimed. The northerly portion was conveyed by the heirs of David Ingersoll to one Benjamin Tarbox, through whom the respondents claimed. The description in this deed is quoted in the opinion on page 95. The dwelling house situated upon the land of Ingersoll was and still is partly upon

the land now claimed by the petitioner and partly upon the land claimed by the respondents. The partitions in the cellar and in the various floors of the dwelling house are not in the same line.

The house standing upon the premises is a two story and a half wooden frame dwelling house, the northerly portion having been occupied by the respondents and their predecessors in title since 1790, and the southerly portion having been occupied by the petitioner and his predecessors in title since 1771.

The house is so constructed that the portion situated on the petitioner's land cannot be materially interfered with without danger or hurt to the support and shelter afforded by that half

to the portion which is situated upon the land of the respondents, unless some suitable support or shelter is substituted therefor.

The partitions of the various floors separating the northerly from the southerly portion of the house at the easterly end on Pleasant Street are shown upon the reduced copy on page 92 of a vertical section plan which was one of the exhibits attached to the report of the judge of the Superior Court hereafter mentioned. This plan also shows the line of the ridge pole and the line of the fence separating the yards of the petitioner and the respondents produced through the house.

The Land Court made the following decision :

" 1. That the boundary line between the petitioner and the respondents is the line of the fence to the house, and thereafter the line of the partition in the cellar protracted to the street; and,

" 2. That the petitioner's title is subject to, and also has the benefit of an easement of the right of occupation, so long as the present house stands, in accordance with the partitions in the several stories thereof and an easement of the right to mutual support and shelter for the several portions of said house belonging to the respective parties."

The petitioner appealed to the Superior Court on the following issues framed by the Land Court under R. L. c. 128, § 13, as amended by St. 1902, c. 458 :

1. " Have the respondents any right, title or interest in the real estate claimed by the petitioner ? "

2. " If the respondents have any right, title or interest in the real estate claimed by the petitioner, what is it? "

In the Superior Court the case was heard by *Lawton*, J., without a jury. He found that the partition referred to in the Ingersoll-Odell deed was the partition in the cellar, and also found that the grantors of the petitioner acquired title by exclusive possession, under a claim of right to the land under the southerly half of the house west of the easterly chimney, and as far north as the partition on the lower floor where there is no cellar, and to the northern wall of the cellar jog where there is no chimney. He ruled that no question of the location of the boundary or division line of ownership between the adjoining estates of the petitioner and of the respondents was open on the appeal and, except so far as modified by his above finding

as to adverse possession, gave a ruling, requested by the respondents, that "as a matter of law the boundary or division line of ownership between the adjoining estates of the appellant and of the appellees on Pleasant Street, Gloucester, must be taken to be the line of the fence to the house and thereafter the line of the partition in the cellar protracted to the street, as set forth in the ruling of the Land Court."

The judge reported the case for determination by this court, the terms of reservation concluding with the sentence quoted in the opinion on page 98. The material facts appear either in the foregoing statement of the case or in the opinion.

*W. A. Pew, Jr.,* for the petitioner.

*W. O. Underwood,* for the respondents.

KNOWLTON, C. J. This is a petition to the Land Court to register the title to two parcels of land in Gloucester. The controversy relates only to the first of these parcels. After a decision and an order for a decree in the Land Court, the petitioner appealed to the Superior Court, under the provisions of the R. L. c. 128, § 13, as amended by the St. 1902, c. 458. Under this section issues for the appeal were framed in the Land Court as follows: "1. Have the respondents any right, title or interest in the real estate claimed by the petitioner? 2. If the respondents have any right, title or interest in the real estate claimed by the petitioner, what is it?" The controversy between the parties relates to the location of the boundary line between their estates, and inasmuch as the description of the petitioner's lot gives no boundary on the side next the respondents' lot, other than the respondents' land, it is now contended that nothing is open on the appeal from the decree of the Land Court. The contention is that the petitioner's claim of title extends only to the true boundary line, and therefore that the respondents have no right or title in the estate claimed by him, the question where the true boundary is having been finally and conclusively settled by the decision of the Land Court. But the record shows that the parties made conflicting claims in the Land Court, in regard to the ownership of a strip of land and the location of the boundary line. The petitioner's claim of ownership was to a line northerly of that found by the Land Court to be the boundary; and the respondents claimed as owners a part of that which the

petitioner claimed in his petition, if we construe the petition acording to his contention as to the location of the respondents' boundary line. The confusion comes from the fact that the description of the land in the petition does not state the boundaries with such definiteness as plainly to show their location on the land. According to the contention of the respondents, the appeal is meaningless and the issues are of no effect.

We are of opinion that this contention is erroneous. The issues might have been framed in better form to present the questions to be answered in the Superior Court. But they are to be read in connection with the findings of the judge of the Land Court, which are a part of the record. Reading them in this way, we see that they are intended to present to the Superior Court the question of title to the land claimed by the petitioner, up to the line which he calls his boundary.

The line in dispute runs through a dwelling house. The deed under which the petitioner claims, which originally divided the ownership of the property, was made in 1771, and it describes the premises conveyed as follows : " The southerly half of my dwelling house in the Harbor, so called, in Gloucester aforesaid, as the same is divided by the partition from the northerly part of said dwelling house, together with the southern half of the land adjoining thereto, reserving liberty of a free passage into and out of the cellar by and through the fore cellar doorway, together with all the privileges and appurtenances to the same half house and land any way belonging." The southerly half of this house is now owned by the petitioner, and the northerly half by the respondents. An ell has been built at the rear of the westerly end of the petitioner's house, the part next to the main house being ancient, and the remainder, further westward, being of recent construction. The plans also exhibit that which appears to be an ell on the westerly end of the respondents' house, and there is nothing in the record to show when it was built. These ells are not separated from each other by any partition, but by an open space, not built upon. While the fact does not distinctly appear, we infer from the description in the deed that neither of them was in existence when the deed of division was made.

Looking at this deed, to which both parties go back to deter-

mine the boundary, it is plain that it is a conveyance of that part of the building which lies southerly of the line of partition that separates the southerly part from the northerly part, so as to divide it nearly in halves. The southerly part of the building as a structure is conveyed as real estate. The difficulty in the case arises from the location of the partitions. The partitions running through the house from east to west, on the first floor and on the second floor, are in substantially, although not exactly the same vertical line, and they divide the house into two very nearly equal parts. They also run in very nearly, but not exactly, a straight line through the house from front to rear, although there are slight irregularities in connection with the construction of rooms upon the opposite sides of the line. The partition through the attic seems to be a straight line, dividing that part of the house equally, or about equally, into two parts, one on the northerly and the other on the southerly side of the partition. As the word "partition" and not "partitions" is used in the deed, we have no doubt that the lines of partition in different stories of the structure were thought of as if they were a single partition, dividing the house in halves, and that the petitioner's predecessor acquired a title to that part of the structure which is southerly of the line of the partition in each story.

The next and most difficult question is, what is the line of the land, which was conveyed in these words, namely: "together with the southern half of the land adjoining thereto." The dwelling house is treated as divided in halves by the partition, and we think it follows that the land adjoining thereto was intended to be divided by the same general line that divides the house. Inasmuch as the partitions in the first and second stories are in very nearly the same vertical line and in the same general course, being almost straight, we think they should determine the ownership of the adjoining land. The attic is an unimportant part of the building, and the partition there departs but little from the line of the two lower stories. So far as we can determine from the plans and the record, the termini of the partitions on the first and second floor at the front and rear of the main house are in the same vertical line, and we think that they should be taken as the termini of the boundary line of the land under the house, which line is to run in a straight course

between these two points and to continue in the same direction to the street in front. If upon a further hearing it appears that there is any difference between the first and second stories in regard to the termini of the partitions at the front and rear of the main house, we are of opinion that the termini of the first story should be taken as the location of the boundary line of the land. Of course, each party had, under the original deed of division, an easement over the land of the other, giving him a right to maintain that part of the structure which belonged to him and which extended beyond the line of his land.

There was no cellar under the rear part of the house on either side, although on the southerly side the cellar extended back farther than on the northerly side. So far as there was a partition in the cellar, its line was very irregular, and cannot have been intended to designate the boundary line of the land, under the deed of division. The only line referred to in that deed is the partition that divides the house as a structure. The ownership of the land is made to depend upon the line that marks the ownership of the different parts of the house.

The facts reported do not indicate that any rights in the land now in question have been gained by adverse possession. The cellar on each side was appurtenant to the house above, and the cellar and the other appurtenances are expressly referred to in the deed. There was an implied easement created in favor of each party, which permitted him to keep and use the cellar as a part of the house or as appurtenant to it, so long as the house should stand. So far as either party has used any part of the cellar beyond the boundary line of his land, he must be held to have used it by virtue of the easement secured to him by the deed, and not adversely. The result is that the rights of the parties in the cellar, outside of the line of their land, are like their rights in the house above. In regard to the house the Land Court made this decision: "That the petitioner's title is subject to, and also has the benefit of an easement of the right of occupation, so long as the present house stands, in accordance with the partitions in the several stories thereof, and an easement of the right to mutual support and shelter for the several portions of said house belonging to the respective parties." We understand that neither party seriously questions the correctness

of this decision, and we see no reason for doubting it.  *Adams* v. *Marshall*, 138 Mass. 228.  *Pierce* v. *Dyer*, 109 Mass. 374. *McKenna* v. *Eaton*, 182 Mass. 346.  So far as it may be applicable, it applies to the cellar, as well as to the structure above.

The report shows that there is a fence in the rear of the house, which terminates at the house, and is treated in some part of its course as a boundary.  The record does not show at what point it meets the house, and there is nothing before us that enables us to determine the boundary westerly of the westerly end of the house as it was in 1771.  We assume that there was evidence before the Land Court relating to that part of the property.

A part of the report is in these words : "If such further rulings are not correct, then the case is to be remanded to the Land Court for a decree with such directions from the Supreme Judicial Court as the facts and the law require."

An appeal having been taken upon certain points from the Land Court to the Superior Court, under the R. L. c. 128, § 13, and the St. 1902, c. 458, and the report to this court being only of questions of law which arose in the Superior Court, our decision upon these questions must go directly to the Superior Court, and the matters involved in the appeal must be finally determined by that court.  Its decision will then be remanded to the Land Court.  This follows from a proper interpretation of the R. L. c. 128, § 14.  It is only when questions of law come directly to the Supreme Judicial Court from the Land Court that this court makes a certificate of its decision to that court.

The case will be further heard in the Superior Court, and a decision entered in accordance with the law as stated above.

*So ordered.*