[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 603 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 604 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 605 
I am of opinion that the legal effect of the several conveyances to lots numbers eighteen and twenty, stated in the case, was to vest the title in the respective owners to the centre of the division wall, from its top down to the crown of the arch of the passage-way, and from thence down to the centre of the passage. Each owner had also the right to the support of the wall afforded by the leg of the arch which rested on the land of the other. Whether this right of support is derived from an implied contract or covenant, or reservation, arising out of the deed, executed when the title to the two houses was severed by the original owner of both, or whether it springs out of the necessity imposed by the law of vicinage, is of but little consequence. In either case the right is the same, so far as the question here involved is concerned. The more important question, and on which the parties differ, is the right of one owner, thus situated, to do the acts complained of in this case. The jury having found that the party-wall and arch were in such a condition that a just regard for life and property rendered their removal necessary, and that the stores, in their then condition, were unfit for occupation, it seems to me to follow, as a necessary legal right, that the defendants might remove them and rebuild others in their places, doing no unnecessary damage, as in this case.
If the defendants could have removed one-half of the party-wall, without removing the other half also, they would have been liable for removing the latter; but the whole evidence established the fact that this was impossible. If the power to remove this dilapidated wall did not exist, then the defendants would have to submit to the inconvenience and danger of occupying their store, with this impending ruin hanging over them, or to abandon it until the plaintiffs or their landlord saw fit to join in the act of rebuilding. Such a result would be a disgrace to the laws of any civilized nation. *Page 607 
The case of Campbell v. Mesier (4 John. Ch. R., 334) went farther than this case requires There the chancellor held the defendant liable to contribute to the expense of erecting a wall, under similar circumstances. Of course it assumed the taking down the old wall to have been justified, which is as far as is necessary to go in this case. I know that case has been questioned in some subsequent ones (Sherred v. Cisco, 4Sandf. S.C.R., 480), but to me it seems to stand on a firm foundation. The equity jurisdiction which formerly existed in the Court of Chancery is now vested in the Supreme Court, so that if there was a distinction between the powers of the two courts over these questions, it no longer exists.
But the right to take down the party-wall in case of necessity, and rebuild, may be well founded on an implied reservation in the grant, when William S. Smith, who owned both lots, conveyed lot eighteen to Burrowes, in 1796. Clearly, he granted the right to Burrowes to have his half of the wall supported by that leg of the arch which rested on the land, he, Smith, retained; not only during the existence of the arch and wall then there, but it was a perpetual easement; as much so, and as enduring, as the easement of the passage-way itself.
The easement that grant conferred on Burrowes, as to one leg of the arch, it reserved to Smith, as to the other leg of the arch. The two tenements became, as to their easements, both dominant and servient tenements, by virtue of the same grant. In all such cases the right to enter into and upon the servient tenement to make repairs, in case of necessity, always exists. This class of easements are properly termed "easements of necessity" (Law ofEasements, 53), and arise out of some act of the owners of the dominant and servient tenement, without which the intention of the parties to the severance cannot be carried into effect, or their rights be enjoyed. *Page 608 
If the easement of the plaintiffs to pass through the passage-way had not been extinguished by its being bricked up in 1834 by the consent of the owner of lot number eighteen, and the new wall erected by the defendants carried down to the earth by the consent of the plaintiffs' landlord, it is clear that an action could have been maintained for thus changing the wall in that particular. But it was proved that the owner of number eighteen assented to the destruction of the easement of the passage-way, and no claim is made on that account, in this action. It was, doubtless, a benefit to both parties.
The case of Matts v. Hawkins (5 Taunt., 20), cited by the appellants' counsel, is an authority to prove that the parties owned this wall, each one-half in severalty; but nothing further. There the parties owned adjoining lands, and had built a party-wall at joint expense, one-half on the land of each. The plaintiff subsequently raised the wall higher than it had formerly been, for the purpose of adding to the buildings on his side; and it was for tearing down this addition to the old wall that the action of trespass was brought and sustained, for that half of the new wall which was over or upon the plaintiff's land. But the right to tear down a ruinous party-wall was not in question in the case, and it, therefore, throws no light on the subject.
The appellants' counsel concede that the defendants would have the right, in case of a party-wall out of repair, to enter upon it for the purpose of repair. I think rebuilding it, in case of necessity for so thorough a work, is repairing it, within the proper meaning of that term.
The defendants claim that the party-wall was in so dangerous a state that they had the right to abate it as a private nuisance. But I doubt whether the law applicable to the subject would warrant them in tearing down the archway or digging into the foundation. (11 Mees. Wells, 176; 11 Barb. S.C.R., 390.) I do not place my opinion on that branch of the defence. *Page 609 
The appellants ask for a new trial, for the improper admission of evidence, which was objected to by him. But the evidence was strictly admissible, as tending to prove that the work was done with the least possible damage to the plaintiffs' business, and the reasons therefor.
The questions propounded to the jury were so framed as to cover all the material issues between the parties, and the responses to them by the jury were equivalent to a special verdict. There was no error in this respect, and the judgment should be affirmed.