#### AT THE

## MARCH SESSION 1872, IN BOSTON.

———

#### PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR., ⎫
HON. JOHN WELLS, ⎪
HON. JAMES D. COLT, ⎬ JUSTICES.
HON. SETH AMES, ⎪
HON. MARCUS MORTON, ⎭

---

## SUFFOLK COUNTY.

DRUSILLA PIERCE & another *vs.* BENJAMIN H. DYER.

There is no implied obligation between owners of distinct parts of a building, which will enable either to maintain an action against the other for mere refusal and neglect to repair his tenement, whereby the plaintiff's part is injured.

TORT. Writ dated September 18, 1871. The first count of the declaration alleged " that the plaintiffs are, and were prior to the year 1870 and the defendant's tenure herein referred to, owners of a dwelling-house situated in Truro in this Commonwealth, and the defendant has been, to wit, since the year 1862, owner and possessor of a house adjoining the house of the plaintiffs; that the two tenements were built as and designed for one dwelling-house by the owner thereof; that there is no partition wall between the said two tenements or parts of said dwelling

house, but they are separated only by an imaginary line passing through the rooms thereof; and that, since the defendant's ownership, the defendant, designing to harm the plaintiffs and their property, has injured and permitted to be injured and to decay his tenement, till it became ruinous, the roof, sides and interior thereof, whereby the plaintiffs' said house has been greatly damaged, and the plaintiffs have been unable to keep the same in any repair, through the wrongful acts of this defendant." The second count was as follows: "And the plaintiffs further say, that they and the defendant are and were owners as aforesaid of two several tenements in the town of Truro aforesaid; that said tenements adjoin each other as aforesaid, and originally formed one dwelling-house, held by one and the same owner; and that the defendant has wrongfully suffered his house to remain out of repair and to decay, and has neglected and refused to repair the same, whereby the interior of the plaintiffs' house became exposed to storms of rain and wind, and said house suffered great damage and injury, the plaintiffs' windows and doors were shattered, the walls and ceilings damaged, the timbers of said house and flooring decayed, and said house has been otherwise greatly damaged." The defendant demurred, on the ground "that none of the acts or omissions charged upon him in said declaration can be the basis of an action by the plaintiffs against him." The superior court sustained the demurrer, and the plaintiffs appealed.

*G. A. King*, for the defendant.

*I. Knowles, Jr.*, for the plaintiffs.

COLT, J. The plaintiffs' action, in both counts, is founded on the alleged right of the owner of one part of a dwelling-house to recover damages at law for the wilful neglect of the other owner in permitting his part to become ruinous and fall into decay, whereby the plaintiffs' house was damaged. The allegation of the first count, that the defendant "injured and permitted to be injured and to decay his tenement, till it became ruinous," must be construed to charge wilful neglect to repair, and does not allege with sufficient distinctness any positive act of destruction or injury by the defendant. There is a wide difference between in-

juries which arise from negligence, and those which result from positive misfeasance; and if the latter were relied on as a ground of action, they should have been distinctly alleged. The second count plainly charges only wrongful neglect and refusal to repair.

It is to be assumed as settled, that, where two or more houses, so constructed as to require mutual support, are conveyed to different owners, or where separate portions of one dwelling become vested in different owners, a right of support, as incident to the property, passes by the conveyance to each grantee, unless excluded by the terms of the grant. *Richards* v. *Rose*, 9 Exch. 218. Easements of this description are acquired by grant; but, in construing the conveyance, it is to be presumed that the parties intended to preserve the obviously existing relations and dependencies of the estate, and all those incidents necessary to the present enjoyment of the thing granted are held to pass. There is an obligation upon each adjacent proprietor in favor of the other, beyond what is implied in the maxim which requires every one to use his own so as not to injure his neighbor. The exclusive dominion of each is so far qualified, that neither can take away the support of the other, however prudent and careful on his part the act may be.

It is argued that the right of support and shelter, to which the purchaser of one part of a dwelling thus becomes entitled, and which may not be taken away by any wrongful act of the other owner, imposes also the active duty to repair the premises and maintain the existing condition of things.

The nature, extent and duration of the servitudes, thus imposed by implication upon each adjoining estate, are not well defined in the reported cases. As a restriction upon the free use of property conveyed in fee, the right is not to be extended beyond apparent necessity. Upon principle, the extent of the burden imposed must be limited by the presumed intention of the parties, having regard to the relations and dependencies of the two estates, and the changes which may reasonably be expected to take place. It is to be considered that the necessity which lies at the foundation of the right arises from the existing relations of artificial structures, for the time being constituting part of the

freehold, but liable to be destroyed by the action of the elements or by mere lapse of time. When thus destroyed, it is fair to presume that the parties intend, in the absence of any agreement, that the easement shall end with the necessity which created it. There can be by implication no mutual easement of perpetual support, applicable to future structures.

In *Sherred* v. *Cisco*, 4 Sandf. 480, it was held that, where a party wall was destroyed by fire, the law would imply no obligation on the adjoining owners to join in rebuilding a new wall, where there was no agreement so to do, the parties being remitted to their original unqualified title up to the division line. And Denio, C. J., in speaking of that case, declares that he sees no solid distinction between a total destruction of the wall and buildings, and a state of things which would require the whole to be rebuilt from the foundation; that in either case there is great force in saying that the mutual easements have become inapplicable. *Partridge* v. *Gilbert*, 15 N. Y. 601. Kerr on Injunctions, 376.

In *Cheeseborough* v. *Green*, 10 Conn. 318, which was an action on the case, brought by the owner of the lower part of a store against the owner of the upper part and roof, to recover damages for suffering the roof to be out of repair, the court held that the action could not be sustained, suggesting that the plaintiff could have relief only in a court of chancery.

The civil law recognizes the existence of an easement to compel the owner of the servient tenement to repair, as distinguished from the ordinary easement of support; but the additional obligation to repair can only arise from express stipulation, or by proof of a prescriptive right to the easement of repair as well as support. Gale on Easements (4th ed.) 312.

The plaintiffs' declaration in this case does not allege as a fact, in direct terms, that they were entitled to have their part of the house supported or protected by the defendant's part, or that any easement of that description existed in their favor. But, giving it the most favorable construction, and assuming that title to such support can be inferred, as matter of law, from the allegations contained in it, yet, as we have seen, the obligation to repair can-

not be so inferred, and without such obligation an action cannot be maintained for mere refusal and neglect. *Peyton* v. *London*, 9 B. & C. 725.                                    *Demurrer sustained.*