BENJ. LYNDS ET AL., Appellants, *v.* WILLIAM G. CLARK, Respondent.

May 29, 1883.

1. DAMAGES — NEGLIGENCE — TRESPASS. — A petition which states that the plaintiff was building a house under a contract to finish the same within a given time or forfeit a sum certain for a delay beyond such time, and that by reason of the adjoining owner's negligence his wall fell upon the plaintiff's materials and occasioned loss by delaying the work, states a good cause of action.

2. —— It is immaterial that, on such a state of facts, the plaintiff could not have recovered in an action of trespass at common law.

3. —— CONTRIBUTORY NEGLIGENCE. — The mere fact that the plaintiff proceeded with the work after he knew the dangerous condition of the wall and after the defendant had promised to remove it, was not such contributory negligence as will prevent a recovery.

4. —— The plaintiff, on the facts, might presume that the defendant would exercise ordinary care, and he took only the risk of injury from pure accident.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and remanded.*

P. R. FLITCRAFT, for the appellants.
ALEX. MARTIN, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case alleges that the plaintiffs were copartners as builders; that on September 13, 1880, a building owned by the defendant, on his lot in St. Louis, was nearly destroyed by fire; that before October 18, 1880, plaintiffs had contracted with one Thompson to erect for him a building on a lot immediately adjoining that of defendant, and to furnish the material for the same; that plaintiffs were erecting this building and working upon it with their employees on October 18, 1880; that the north wall of defendant's building on the adjoining lot, owned and occupied by defendant, was left standing in a dangerous condition from the date of the fire by the carelessness and negligence of defendant; and that on October 18th, without any fault of plaintiff, this wall fell upon the building, which they were erecting, and crushed in its walls, and knocked down and destroyed the bricks of which they were composed; that the joists and timbers used in the construction of said building were thereby broken and damaged, and lumber, window frames, sash, door frames, and doors, used and to be used by plaintiffs in the construction of the building, and also other building material belonging to plaintiffs, were thereby broken and destroyed to the damage of plaintiffs, $500. That, by the falling of this wall a great quantity of brick, mortar, and rubbish was thrown upon the building being erected by plaintiffs, causing them a damage of $200 for expenses in removing the same; that by their contract with Thompson, plaintiffs were bound to have the building, which they were erecting for him, completed by a day fixed, or, in case of failure, to forfeit to him a large sum of money for each day that said building remained unfinished after the day named in the contract for its completion; that, by

the falling of the wall upon the building, plaintiffs were delayed in the prosecution of the work, compelled to employ an additional force of laborers, greatly to their loss, and were unable to complete the building within the time limited in the contract; by reason of all which, they were further damaged $500. Judgment is asked for the sum of $1,200. The answer was a general denial. At the close of plaintiffs' case, the court, at the instance of defendants, gave an instruction, that, on the evidence, the plaintiffs were not entitled to recover. Plaintiffs took a non-suit with leave, which the court afterwards refused to set aside.

The plaintiffs introduced evidence tending to show that defendant owned a five-story building in St. Louis, with a high gable, and that one Thompson owned a building adjoining, on the north. The wall between the buildings was a party wall, up to the height of Thompson's building, which was two stories lower than that of defendant. These two buildings were partly destroyed by fire on September 13, 1880. The north wall of defendant's building was left standing in a dangerous condition. Thompson, immediately after the fire, made a contract with plaintiffs to restore his building complete, as before the fire, for $6,000; the building to be completed by a day named, and plaintiffs to forfeit $10 a day for all delay in completing the building after that time. Plaintiffs at once set to work on the Thompson building. They repeatedly called defendant's attention to the dangerous character of the wall. The wall was highly dangerous and liable to topple at any time. Plaintiffs' workmen, on some occasions, left their work on account of this. Defendant repeatedly promised to remove the wall, and admitted that it was dangerous, but nothing was done about it. Plaintiff Benjamin Lynds says, that he thought that when the wall fell it would fall south, away from Thompson's lot. On October 18th, the gable and upper part of defendant's wall fell into the Thompson lot, breaking off at a point twenty feet above the line at which

it ceased to be a party wall. At the time of the fall plaintiffs had made considerable progress in rebuilding the Thompson house. Various materials, belonging to plaintiffs, and lying on the Thompson lot to be put into the house, such as door and window frames, were broken; the walls of the house in progress of erection were knocked down to a great extent and the bricks and joists and materials in them were damaged; this, and the cost of relaying the walls, is estimated at $476; it cost $50 to clear away the rubbish; and as the work was delayed by the accident till it was too cold to plaster the house without fires, stoves, fuel, and a janitor had to be furnished, at a cost to plaintiffs of $110. Thompson was entitled to a large amount under the contract for delay in completing the house, but accepted $175, which was paid to him as a compromise by plaintiffs. After the wall fell, plaintiffs completed the Thompson house according to contract. Defendant was in possession of the lot on which the union wall stood at the time of the accident.

1. Respondent contends that this is an action for trespass upon real estate, and that, as plaintiffs had no estate or title in the realty claimed to have been injured, and as they were not in possession, or proprietors in any sense of the term at the date of the accident, there can be no recovery in this action.

It is true that the action of trespass lies only in favor of the person in possession of the realty at the time the trespass was committed; but this principle does not seem to be decisive in the present case. The question is not as to the common-law form of action, but, whether, upon the allegations and proofs, a case is made out of a wrong done to plaintiffs by the negligence of defendant for which damages may be recovered. If plaintiff's horse, by the permission of Thompson, had been on Thompson's lot, and defendant's wall, by the carelessness of defendant, had fallen and killed

plaintiff's horse, it does not appear why plaintiff might not recover, though he had no interest in the soil on which the horse stood. It is true that the action would not be in trespass, but in case ; but the common-law forms of action being done away with, we are concerned only to see whether the petition sets forth a good cause of action under the code, and whether there is substantial evidence to support its material allegations. It is by no means clear, on the facts stated, that plaintiffs would have had a common-law action of trespass for the injury done to the building. For an injury to real property in possession, trespass was the proper remedy. Plaintiffs were occupiers of the lot for a special purpose, and if they had been erecting a building upon the lot, which was their own when erected, they might have maintained trespass ; but where the plaintiff's interest in the property injured is something else than an absolute interest, case is the remedy at common law. It might be said that though the materials injured belonged to plaintiffs, yet, as they were built into the house, they became part of the soil, and plaintiffs would no longer have such an interest in them as would enable them to maintain trespass. But, however that may be, when the joists and bricks were knocked out of the wall, they became personal property again. Plaintiffs were injured by their being destroyed as material. They were injured by the damage to the frames and material that had never been in the house ; they were injured by being prevented from fulfilling their contract, and from being compelled to proceed with their work under circumstances of greater expense. If this injury proceeded from the negligence of defendant as its efficient cause, we do not see why they have not a cause of action. It is clear that the owner of the house and lot has none. She has been compensated for the delay in completing the building ; any injury in that respect was to fall upon plaintiffs under the contract, and it fell on them alone. This action is not for

the damage done to the building of Thompson, or any injury to his real estate, but for an injury to the property and the property rights of plaintiffs whilst lawfully on Thompson's lot, occasioned by the negligence of the adjoining proprietor.

2. We do not think that the fact that plaintiffs knew that the wall was dangerous, and nevertheless went on, under their contract with Thompson, to rebuild the house on his adjoining lot, on the faith of defendant's promises that he would remove the wall, was such evidence of contributory negligence as to warrant the court in taking the case from the jury. Thompson had a right to use his lot, and might lawfully contract with plaintiffs to rebuild; their contract with him compelled them under heavy penalties to proceed with their work. They could not, without committing a trespass, enter upon defendant's lot to remove his shaky wall, and they seem to have proceeded on the faith of his promise that he would remove it. It does not appear that they could have shored it up, or by any reasonable diligence prevented its fall. The property of plaintiffs was exposed to hazard, according to the testimony, whilst they were in the ordinary exercise of their rights on Thompson's lot under a license from him, which license was granted to them by Thompson under the ordinary exercise of his rights. After the lapse of a reasonable time to remove the wall, and after due notice, it would seem that plaintiffs might proceed with the building. They took the risk of an injury from pure accident, but not the risk of injury from the neglect of defendant to do his duty by exercising ordinary care not to injure the adjoining property by maintaining a nuisance upon his own lot. Plaintiffs had a right to presume that defendant would exercise ordinary care. *Brown* v. *Lyon*, 31 Pa. St. 510.

We think that the judgment should be reversed and the cause remanded. All the judges concur.