J. E. JACKSON, Trustee, Appellant, v. HENRY BRUNS.

**Party walls:** REPAIR. The owner of the second story of a building, in the absence of a contract, has no equitable right to compel the owner of the first story to repair his foundation and walls for the purpose of furnishing support for the second story, where the defective condition was the result of the natural deterioration due to the elements and not the fault of the owner.

*Appeal from Keokuk District Court.—* HON. BYRON W. PRESTON, Judge.

MONDAY, FEBRUARY 12, 1906.

ACTION in equity to compel defendant to repair a defective wall in a building of which defendant is the owner of the first story and the plaintiff the owner of the second story. After hearing the evidence the trial court dismissed plaintiff's petition on the merits and rendered judgment for defendant. Plaintiff appeals.— *Affirmed.*

*Talley & Hamilton,* for appellant.

*C. H. Mackey* and *Stockman & Hamilton,* for appellee.

McCLAIN, C. J.— It appears from the evidence that in 1883 the defendant was the owner of the east one-third, and one John Stroup of the west two-thirds, of a 66-foot lot in the town of Richland, and that each was proposing to erect a building on his portion of such lot. Thereupon some agreement was entered into (the exact terms not ap-

pearing in the record) by which defendant, who only needed a one-story building, should permit said Stroup to erect a second story over defendant's building, as well as over the first story of his own building such second story to be used as a public hall. This arrangement was carried out, and plaintiff, as trustee, is the owner of the interest of said Stroup in the entire building or block erected in pursuance of this arrangement.

It further appears that the foundation and walls of the first story in the southeast corner of the block are cracked and threaten to give way, so that the support which they have furnished to plaintiff's portion of the second story over defendant's building will be lost. The cause of this present defective condition of the walls in the first story of defendant's part of the building does not clearly appear; but the evidence is insufficient to establish any negligence in the original construction of defendant's walls, and there is no evidence of active wrong on the part of defendant, causing the present condition. We think it is clearly shown that by reason of the gradual uneven sinking of the foundation and the ordinary decay and deterioration due to the action of the elements, and without any fault on the part of defendant, the walls have become insufficient to furnish a safe and secure support to the second story of the building.

Under these circumstances the plaintiff asked that defendant be required " to rebuild and repair said defective walls in such a manner that they will be a good and substantial support for plaintiff's said building." The relief thus asked was denied, and the concrete question argued by counsel and to which our attention must be directed is whether the owner of the second story of a building is entitled in equity to a decree compelling the owner of the first story to keep in repair the foundation and walls of the first story for the purpose of furnishing support to the second story.

Any act of the owner of the lower story which should

impair the support of the upper story to the injury of its owner would without doubt furnish the basis of an action for damages. *Richards v. Rose,* 9 Exch. 216; *Brown v. Windsor,* 1 Cromp. & Jer. (Exch.) 20; *Pierce v. Dyer,* 109 Mass. 374 (12 Am. Rep. 716). But the owner of the second story does not have a perpetual easement, so as to be entitled to have the owner of the lower story replace his walls, in case of total destruction without his fault, for the purpose of furnishing support to the upper story of the other party. This is the rule with regard to party walls, and the reasoning seems to be equally applicable to such a case as this, where the owner of the second story is entitled to the use of the walls constructed by the owner of the first story. *Sherred v. Cisco,* 4 Sandf. (N. Y.) 480; *Partridge v. Gilbert,* 15 N. Y. 601 (69 Am. Dec. 632); *Heartt v. Kruger,* 121 N. Y. 386 (24 N. E. 841, 18 Am. St. Rep. 829, 9 L. R. A. 135); *Hoffman v. Kuhn,* 57 Miss. 746 (34 Am. Rep. 491); *Odd Fellows Ass'n v. Hegele,* 24 Or. 16 (32 Pac. 679.) The owner of one portion of a building cannot recover damages against the owner of another portion (in the absence of any contractual relation between them giving rise to a duty on the part of the latter to keep his portion of the premises in repair) for damages resulting from the failure to make repairs. *Cheeseborough v. Green,* 10 Conn. 318 (26 Am. Dec. 396); *Pierce v. Dyer,* 109 Mass. 374 (12 Am. Rep. 716). Nor can the owner of one portion compel the owner of another portion to contribute to or bear the expense of making necessary repairs. *Loring v. Bacon,* 4 Mass. 575; *Ottumwa Lodge v. Lewis,* 34 Iowa, 67. In *Campbell v. Mesier,* 4 Johns. Ch. (N. Y.) 335 (8 Am. Dec. 570) the equitable right to contribution is upheld; but that case has not been followed, in New York or elsewhere. In the case of a party wall it has been held that either owner may repair or replace (*Schile v. Brokhahus,* 80 N. Y. 614), but that neither one is bound to repair for the

purpose of protecting the property of the other.   *Colebeck
v. Girdlers Co.,* 1 Q. B. D. 234.

While none of these propositions exactly fits the case
before us, we think they clearly indicate the conclusion that
the defendant in this case was under no obligation to keep
his walls in repair for the purpose of furnishing a continuing
support to plaintiff's part of the building.   As was said by
*Denio,* C. J., in *Partridge v. Gilbert,* 15 N. Y. 601, 614
(69 Am. Dec. 632), with reference to a party wall:

The right of one of the adjoining owners to the support
of the part of the wall standing on the land of the other
owner existed as long as the wall continued to be sufficient
for that purpose and the respective buildings remained in a
condition to need and to enjoy that support.   When this
ceased to be the case, and it became necessary to take down
the wall and rebuild the stores, either the interest of each
proprietor in the land of the other ceased with the existence
of the state of things which had created it, or each was enti-
tled to call upon the other to contribute towards rebuilding
the wall on the same site, and, in case of his default, to build
it himself and call upon the other owner to reimburse him
one-half of the expense. . . . . I do not perceive any
solid distinction between a total destruction of the wall and
buildings, and the state of things which should require the
whole to be rebuilt from the foundation.   In either case there
is great force in saying that the mutual easements have be-
come inapplicable, and that each proprietor may build as he
pleases upon his own land, without any obligation to accom-
modate the other.   Circumstances may have materially
changed since the adjoining proprietors were content with
such walls as would have supported two adjoining dwellings.
If the right of mutual support continues, by means of the or-
iginal arrangement, or by prescription, it is for just such an
easement as was originally conceded, or which has been estab-
lished by long enjoyment.   But in the changing condition of
our cities and villages it must often happen, as it did actually
happen in this case, that edifices of different dimensions and
an entirely different character would be required.   And it
might happen, too, that the views of one of the proprietors
as to the value and extent of the new buildings would essen-

tially differ from those of the other; and the division wall, which would suit one of them, would be inapplicable to the objects of the other.

In *Pierce v. Dyer,* 109 Mass. 374, 376 (12 Am. Rep. 716), the following language is used with reference to party walls which as it seems to us is in principle applicable to the case we are now considering:

The nature, extent, and duration of the servitudes thus imposed by implication upon each adjoining estate are not well defined in the reported cases. As a restriction upon the free use of property conveyed in fee, the right is not to be extended beyond apparent necessity. Upon principle, the extent of the burden imposed must be limited by the presumed intention of the parties, having regard to the relations and dependencies of the two estates and the changes which may reasonably be expected to take place. It is to be considered that the necessity which lies at the foundation of the right arises from the existing relations of artificial structures, for the time being constituting part of the freehold, but liable to be destroyed by the action of the elements or by mere lapse of time. When thus destroyed, it is fair to presume that the parties intend, in the absence of any agreement, that the easement shall end with the necessity which created it. There can be by implication no mutual easement of perpetual support, applicable to future structures.

Some reliance is placed in argument on an English case finally decided in the House of Lords (*Rowbotham v. Wilson,* 8 H. L. Cas. 348); but that related to the support of the surface belonging to one owner by the mineral beneath belonging to another owner, who had the right to mine it, and the final decision was made to depend entirely on the terms of the respective grants under which the separate owners claimed. It is apparent that the right of the owner of the surface to support from underlying strata of mineral is simply another phase of the rule as to lateral support which is based on the doctrine of *"sic utere tuo."* It is well set-

tled that the duty to furnish lateral support to adjoining premises does not involve any duty to furnish permanent lateral support for buildings erected upon such premises. Counsel for appellant concede that the American cases do not, in general, support their contention; but they claim that the cases which have already been cited all refer to actions at law, and that there is an equitable rule recognized by some courts, and particularly by this court, in accordance with which one of the separate owners of a building can be compelled to keep his portion in repair for the protection of the portion of the premises belonging to the other. In *Cheeseborough v. Green,* 10 Conn. 318, (26 Am. Dec. 396), already cited, which was an action at law by the owner of the lower story of a building to recover damages to his goods by reason of a failure of the owner of the upper story to keep his roof in repair, it is said that there is no remedy at law, but " that in a court of chancery only can the plaintiff have equitable remedy." There is nothing in the opinion to indicate what the equitable remedy of plaintiff would be, whether to enter upon the premises of defendant, make the repairs, and ask contribution, or, as sought by plaintiff in this case, a decree requiring the repairs to be made. It would seem that the court had in mind some method of relief by means of contribution, for it cites *Campbell v. Mesier,* 4 Johns. Ch. (N. Y.) 334 (8 Am. Dec. 570), already noticed. But there is no principle of contribution which will help out the plaintiff in his present contention. Counsel also rely upon *Ottumwa Lodge v. Lewis,* 34 Iowa, 67, in which the court reversed a judgment in favor of the owner of the upper story of a building against the owner of the lower story for the expense of the former in making repairs on the roof, but in which it is said by way of dictum that " where a man has a ground room those over him may have an action to compel him to keep up the walls." No authorities are cited by the court in support of this statement except Cheeseborough v. Green, *supra,* and the English

cases, *Tenant v. Goldwin,* 2 Ld. Raym. 1089, and Anon., 11 Mod. 7. The first of these has no application to the question, for the point discussed was whether one who allows filth to escape from his land upon his neighbor's land through a defective wall is liable in damages, while the other English case evidently has reference to the relief which might be secured under the writ *de reparatione facienda,* which was held by Lord Holt in Tenant v. Goldwin, *supra,* to be by virtue of particular custom and not of common law. See *Loring v. Bacon,* 4 Mass. 575; *Cheeseborough v. Green,* 10 Conn. 318 (26 Am. Dec. 396). Counsel referred, also, to something said by this court in *McCormick v. Bishop,* 28 Iowa, 233, 241, to the effect that, if the owner of the lower story of a building allows his portion to remain out of repair so as to endanger the safety of the story above, the owner of the latter may in equity in a proper case compel the former to make repairs or to allow the latter to do so at the former's expense, wholly or in part, as may be determined to be just and right. But this expression of view is in a very anomalous case, in which the court quotes with approval language found in *Rhodes v. McCormick,* 4 Iowa, 368, where it is said that the owner of the lower portion of the building has the right to continue his occupancy so long as his portion is tenantable, and to enjoy it as his own property, protecting his walls and making all necessary repairs, while the owner of the upper part has a like right with reference to his portion. The case of McCormick v. Bishop, *supra,* seems not to have necessarily involved any expression of opinion with reference to the right of the owner above to compel the owner below to keep up his walls for the benefit of the upper owner, and no authorities are cited in support of any such duty.

The action which plaintiff seeks to maintain in this case is wholly without precedents, either at law or in equity, and we think that the facts of the case show that such an action ought not to be maintained. It appears from the evidence

that the whole building is in a dilapidated condition and that very material changes throughout are necessary to render it a permanently safe and sound structure. If defendant does not desire to restore his walls to a sound and safe condition for his own benefit, he ought not to be compelled to maintain them for the benefit of plaintiff, in the absence of any express or implied contract on his part. So far as it appears, the plaintiff acquired simply a permissive right in the nature of a license to support his walls on those of the defendant, and he ought not to be allowed to convert this license, though coupled with an interest, into a permanent obligation on the part of defendant to give perpetual support to the upper portion of the building, regardless of changed conditions. When defendant's walls have, in the course of nature, so far decayed that they no longer furnish adequate support to the portion of the building above, he should have the right to erect a different structure, if he sees fit, and make such use of his premises as he sees fit, regardless of the license which plaintiff may have had to make use of the support of such walls so long as they were sufficient to furnish support.

We reach the conclusion that the decision of the trial court was correct, and its judgment is *affirmed*.