PHIL ROSITZKY, RESPONDENT, v. CALVIN C. BURNES ET AL., APPELLANTS.* .

Kansas City Court of Appeals.   May 9, 1927.

*Corpus Juris-Cyc References: Adjoining Landowners, 1CJ, p. 1203, n. 5; Appeal and Error, 4CJ, p. 701, n. 49; Landlord and Tenant, 36CJ, p. 244, n. 3; Waters, 40Cyc, p. 654, n. 88.

Duvall & Boyd and Miles Elliott for respondent.

Landis & Duncan and William M. Morton for appellant.

ARNOLD, J.—This is an action for damage to plaintiff's building and stock of merchandise from water alleged to have been caused to back up and into the same through the negligence of defendants who were the owners of an adjoining building.

The record discloses that plaintiff was the owner of a certain building located at Nos. 305 and 307 Felix street in the city of St. Joseph, Mo., and a stock of goods and merchandise located therein; that defendants were the owners of a certain building located at the northeast corner of Third and Felix streets, immediately west of and adjoining plaintiff's property. In May, 1925, and for some years prior thereto defendants' building had been occupied by the Western Union Telegraph Company and was commonly known as the Western Union Building. This building was forty feet north and south and thirty feet east and west and the roof thereof was entirely surrounded by fire walls projecting above the top. Plaintiff's building was thirty-eight feet east and west and forty feet north and south, divided approximately into two equal portions by a wall which ran north and south through the entire building and projected above the roof, so that the part of plaintiff's roof adjoining defendants' building was nineteen feet east and west by forty feet north and south. There was an opening in the fire wall between the two buildings near the southeast corner of defendants' building, so that rain falling on the roof of the latter came through this opening onto plaintiff's roof which is lower than that of defendants' building and into a down spout near the southwest corner of plaintiff's building and thence into the sewer system of the city of St. Joseph; the said down spout and connections with the sewer system were located entirely on plaintiff's property.

It appears that plaintiff had placed a wire cup or basket made of wire mesh upon the top of said down spout so as to prevent any debris, lime or mortar being carried into said drain by rainfall; that plaintiff's building consisted of a basement, a first floor, a balcony and another floor used for living rooms and that there was a bathtub on this floor. The waste and drainpipes from said bathtub were connected with the down spout carrying off the water from the two roofs.

The petition alleges that on May 26, 1923, defendants were the owners of the building immediately west of and adjoining plaintiff's property; that defendants then and there, and for a long time prior thereto, so negligently kept and maintained their building and the roof thereof that all the water and rain falling thereon gathered, collected and were carried through a hole in a fire wall onto the roof of plaintiff's building and into a down pipe leading from the roof

of plaintiff's said building into the ground and sewer system; and defendants negligently permitted the roof of their said building to be littered and strewn with bricks, parts of bricks, mortar and sand and various other substances and materials, rubbish and debris; and negligently permitted the same to accumulate and be upon the roof of said building; and knew, or by the exercise of ordinary care could have known that the same were so on the roof of their said building and by water and rain on said building were likely to be washed and carried into plaintiff's said down pipe, and would be likely to, and would, cause said down pipe to become clogged, choked and stopped up, and as a result thereof, the water and rains falling upon the roof of defendants' said building and upon the roof of plaintiff's building would be caused to back up and through said down pipe and out upon and into plaintiff's said building and his stock of goods and merchandise; that by reason of such negligence of defendants, the said down pipe on plaintiff's property was caused to become clogged and stopped up, and plaintiff's building and stock of merchandise to be flooded, watersoaked and otherwise damaged. Damages were asked in the sum of $6000.

The answer was a general denial. The cause was tried to a jury and a verdict for plaintiff was returned in the sum of $700, and a judgment was accordingly entered. A motion for a new trial was overruled and defendants have appealed.

The evidence in support of the allegations of the petition was that plaintiff and defendants owned the buildings as alleged; that the roof of defendants' building was two or three feet higher than plaintiff's roof; that defendants' roof sloped to the southeast and drained through the fire wall between the buildings onto plaintiff's building, thence into a down pipe at the southwest corner thereof; that the west side or half of plaintiff's roof drained into his down pipe and the other side drained to the eastward; that at the time in question plaintiff's roof was comparatively new and clean of cinders, rubbish and other debris; that the brick and cement were crumbling and falling from the walls which projected above the roof of defendants' building, and that as to rubbish, mortar, gravel and debris, defendants' roof was in bad condition; that about three months before the occurrence which is the basis of this suit, plaintiff called C. C. Burnes, one of the defendants and told him the roof of defendants' building was in bad condition and causing plaintiff much trouble and that Mr. Burnes sent a Mr. Wehrman to look after it.

On the second floor of plaintiff's building was a bathtub connected with the down pipe mentioned. At the time the damage occurred there was a rain, and the sewer pipe in plaintiff's basement at the bottom of the down spout became clogged and stopped up by mortar, gravel, sand and other stuff off the roof of defendant's building. The

water was caused to be backed up into the bathtub, to overflow the same and to run down into the building. The plumber who opened up the sewer pipe at the bottom of the downspout testified:

"The sewer pipe was stopped up . . . I took a hammer and broke it—about eight feet of it. It was stopped up with gravel, lime and stuff . . . I took out lime and gravel—I guess a bushel and a half of gravel in the pipe . . . after I got it cleaned out, I went up to the roof to see the cause. About the only thing I could find on the roof—Mr. Rositzky has a rubberoid roof—no gravel on his roof at all. On the Western Union Building (defendants' building) there was brown gravel on top of the fire wall. Looked like somebody stepped on it and broke the brick and plaster down, and down in the gutter of the Western Union Building, that was filled full of mortar gravel stuff off the roof down in there, and sand, the same stuff no doubt as I found in the basement. No stuff like that was on Rositzky's roof. I looked at the bathtub and found the bottom covered with sand and stuff sucked down."

Plaintiff testified that the night before the occurrence of the alleged damage he was returning from St. Louis, arriving in St. Joseph in the morning about 7 o'clock; that he called one Sam Gold who was in his employ and the two went to the store and discovered the flood and the merchandise under water. Gold corroborated plaintiff in his testimony and stated it had rained very hard the night before and on that morning until nine or ten o'clock; that the rain was general and heavy all over the city.

One Neely who lived over plaintiff's store testified that it rained the night before plaintiff's return from St. Louis; that he had lived in the same quarters for about seven years; that plaintiff's roof was clean and that there was gravel on the roof of defendant's building, the same as he saw in the down pipe. Plaintiff fixed the date of his return to St. Joseph from St. Louis as May 26, or the night of May 25, 1923. Counsel for plaintiff, in his brief, states as to this date: " . . . there would appear to be a mistake as to this date because W. S. Belden, a witness for defendants, in charge of the U. S. Weather Bureau, testified that there was no rainfall in the night between the 25th and 26th, but there was rain of one-fourth inch on May 24, which began falling between twelve and one o'clock A. M., and that there was also rain of .77 of an inch on May 23, during the early morning and forenoon. Regardless of the date, the testimony of plaintiff, of the witness Gold and the witness Neely clearly shows, as above indicated, that it had rained during the night before plaintiff's discovery of the water damage to his building and merchandise in the morning. The testimony further showed that the faucets of the bathtub were closed and that the water which ran out of the bathtub had come up through the waste pipe."

There was testimony in plaintiff's behalf to the effect that there was much damage to plaintiff's building and merchandise from the water. The record shows that at the close of plaintiff's case and at the close of all the evidence, defendants asked instructions in the nature of demurrers which the court refused. The main point urged in support of the appeal is that the trial court erred in refusing defendants' proffered instructions in the nature of demurrers; and, in this connection it is urged that plaintiff's petition only alleges that defendants were the owners of the building adjoining that of plaintiff and that it does not allege them to be in control or possession of the same.

It is true the petition fails to aver that defendants were in control or possession of their building. Defendants insist it is shown by all the evidence in the case that the said premises of defendants, in fact, were rented to and were in the control of the Western Union Telegraph Company. However, we do not so read the record. There is evidence that the building was generally known as the Western Union Building. We find nothing in either the petition or answer to the effect that the telegraph company was in control of the said entire building.

It is urged that the owners of a building cannot be held liable for the failure of a tenant to keep the roof of rented premises free from the accumulation of debris. A number of citations are made in support of this well-known principle of law, among which is the case of Beane v. Investment Co., 211 Mo. App. 200, 240 S. W. 840, decided by this court. The distinction between that case and the one at bar is that in the Beane case the evidence disclosed that the property was in the possession of a tenant under the terms of a lease for a term of years, and we held that if the obstruction was produced by some cause which arose while the tenant was in such possession, the defendant owner would not be liable. And in Kilroy v. St. Louis, 242 Mo. 79, 145 S. W. 769, the same principle of law was announced. The record in that case showed there was an allegation that the offending property was held by a lessee in possession. The court held that where the abutting property is leased and has been for twenty years, yet in the actual occupancy of a sub-tenant, it is the sub-tenant and not the lessee, if either, who is liable for damages. In such case the lessee is in constructive possession only and not the actual possession, and the liability attaches to the one whose duty it is to keep the premises in order. As already stated, there is no allegation in any of the pleadings that the Western Union Telegraph Company was the lessee of the building; and no testimony in support of such a lease is found in the record. The other citations of defendants support the rule just announced. In the absence of such a showing, the point must be ruled against defendants' contention.

In the case at bar there is a showing that on one occasion prior to the occurrence which is the basis of this action, on complaint of plaintiff, defendants had examined and repaired the roof of the building in question. In this connection defendants urge that when repairs are voluntarily made by the landlord, such fact is not an admission of liability on his part to make repairs generally and to keep the building in repair. In view of our ruling on the preceding point, this question is out of the case.

The record discloses that both parties hereto tried the case upon the sole theory that if the down spout was negligently caused to become clogged and stopped up by gravel, mortar and rubbish from the roof of defendants' building, defendants were liable. Under the well-known rule that the appellant will be held strictly to the theory upon which the cause was tried, defendants will not be heard to complain that such theory was erroneous. [Hill v. Drug Co., 140 Mo. 433, 41 S. W. 909; Sturtevant v. Mfg. Co., 288 S. W. 59, 67.]

Defendants also urge that the evidence of plaintiff is so contrary to the physical facts and so incredible that the case should not have been submitted to the jury. This charge refers to the testimony of the U. S. Weather Bureau's representative that there was no rain on May 25, 1923, the night preceding the alleged damage. However, there was substantial testimony in plaintiff's behalf that there was a heavy rain on the date mentioned, thus creating a conflict in the evidence on this point. The jury was not required to believe the testimony produced by either party on any controverted point. It was within the sole province of the jury to weigh the evidence. Their finding was in favor of plaintiff and we are not authorized to disturb it.

Defendants argue that plaintiff's damage is shown to have been due to his own negligence in failing to maintain a wire basket or guard on the top of his down spout. On this point the testimony was conflicting and the question was for the jury. Moreover, it is well established that a property owner is not required to erect barriers to protect himself against the negligence of others. Citations on this point are unnecessary.

Finally, a charge of error is directed against plaintiff's instruction No. 1, in that it does not correctly declare the law. The instruction is long and we deem it unnecessary that it be set out in full. The objection, chiefly, is that the instruction "declares the law to be that the owner is liable for the negligence of the tenant," etc., but we have already discussed this point and ruled against defendants' contention thereon. It is proper to say the instruction correctly declares the law in accordance with the above rulings.

We find no reversible error of record, and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.