PAOLA LODGE No. 147, OF INDEPENDENT ORDER OF ODD FELLOWS ET AL., RESPONDENTS, v. THE BANK OF KNOB NOSTER, A CORPORATION, APPELLANT.—176 S. W. (2d) 511.

Kansas City Court of Appeals. December 6, 1943.

*M. D. Aber* for appellant.

*Russell Garnett* for respondents.

BLAND, J.—This is an action by the owner of the upper story of a building, against the defendant, the owner of the lower story, to recover damages for the wilful neglect of the defendant in permitting the lower story to fall into decay, whereby plaintiffs' part of the building was damaged. There was a verdict and judgment in favor of plaintiffs in the sum of $230, and defendant has appealed.

There is no point raised as to the capacity of plaintiffs to sue.

The building in question is located in the town of Knob Noster. Shortly after its completion, in 1869, the owners conveyed, in fee simple, the second story, and the stairway approach thereto, to the plaintiff, Paola Lodge. The deed made no mention of any maintenance by the grantors of that part of the property not conveyed and supporting the upper story. After conveying the second story the owners thereof conveyed, in fee simple, the remainder of the building to others until title thereto, by mesne conveyances, rested in the defendant in 1936. Defendant took over the lower story on a loan that it had made against it.

The upper story was occupied by the Paola Lodge from the time it purchased it in 1869 until the time it was compelled to move out on January 11, 1941. It kept the upper story, the roof and guttering in good repair and received rents and emoluments from that part of the building. After acquiring its title defendant made no effort to keep up its portion of the building but permitted it to run down. The window panes became broken out in the basement, which were located in the rear and below the surface of the ground "in a hole", so that rain and surface water drained into, and blew into the basement.

Defendant did not, at any time, occupy its portion of the building and made little, if any, effort to rent it. Sometime in 1939 a small part of the rear wall of the building near the two rear windows fell out. Plaintiffs demanded that defendant repair the damage. De-

fendant offered to share the costs of the repairs but plaintiffs refused, insisting that the duty devolved upon defendant. Nothing was done about the matter. Thereafter a larger portion of the rear wall fell out and the collapse of the rear or west end of the building was completed by the falling out of the west end of the lodge hall.

Defendant insists that the court erred in refusing to give its instruction in the nature of a demurrer to the evidence for the reason that there was no duty imposed upon it to keep its part of the building in repair. In view of the fact that there was no covenant or provision in the deed conveying the upper story to plaintiffs relative to support or repairs, the respective duties of the owner of the upper and lower stories, toward each other, must be implied from the circumstances, but the rights of the parties will not be extended beyond apparent necessity. [Pierce v. Dyer, 109 Mass. 374.]

There is considerable discussion in the briefs as to the relationship existing between the owners of the upper and lower floors. Defendant contends that a mere easement is involved, the upper being the dominant and the lower the servient tenement, and applying the general rule in easements that the owner of the servient tenement is under no further duty than to refrain from actively bringing about damage to the dominant estate, it urges that it was under no duty to keep the subject of the easement in repair but that duty rests on the plaintiffs, the owners of the dominant tenement. [See Schuricht v. Hammen, 221 Mo. App. 389, for general rule.]

Plaintiffs insist that it is not an easement that is involved but a mutual obligation resting upon each owner to keep his part of the building in repair; that the right that each has in a natural right growing out of the inseparability of the property itself; that this right is to be likened to the right of lateral or subjacent support; that there is no easement, for easements are acquired by the acts of the parties through contract or grant; they sound in contract and that the burden or obligation is unilateral, resting only on the servient estate. [For discussion of reciprocal easements see Greisinger v. Klinhardt et al., 9 S. W. (2d) 978.]

Some authorities hold that the situations similar to those in the case at bar give rise to easements. [See Pierce v. Dyer, *supra*.] Others *quasi*-easements. [See 17 Am. Jur., pp. 945, 950, 1003, 1004.] Others to a permissive right in the nature of a license coupled with an interest. [Jackson v. Bruns, 129 Iowa, 616, 623.] But whatever may be the exact technical relationship existing between the owners of the building, we are of the opinion that there was no obligation on the part of the owner of the lower story to keep it in repair for the benefit of the owner of the upper story.

It will be readily seen that what plaintiffs are really contending for is to impose a permanent obligation on the part of the defendant to give perpetual support to the upper portion of the building, re-

gardless of changed conditions, and there is much evidence of such change transpiring during the seventy-two years since the lodge acquired the upper story of the building. We do not think that such an obligation is to be implied by the necessities of the situation under the circumstances.

In the case of Pierce v. Dyer, *supra*, two buildings were designed for one dwelling house, there being no partition between. One of the owners permitted his part to decay and become ruinous greatly damaging plaintiff's portion. Plaintiff sought to recover damages at law for the wilful neglect of the other owner resulting in damage to plaintiff's portion of the building. In denying recovery on the facts alleged, the court said, l. c. 376, 377:

"The nature, extent and duration of the servitudes, thus imposed by implication upon each adjoining estate, are not well defined in the reported cases. As a restriction upon the free use of the property conveyed in fee, *the right is not to be extended beyond apparent necessity*. Upon principle the extent of the burden imposed must be limited by the presumed intention of the parties, having regard to the relations and dependencies of the two estates, and the changes which may reasonably be expected to take place. It is to be considered that the necessity which lies at the foundation of the right arises from the existing relations of artificial structures, for the time being constituting part of the freehold, but liable to be destroyed by the action of the elements or by mere lapse of time. When thus destroyed, it is fair to presume that the parties intend, in the absence of any agreement, that the easement shall end with the necessity which created it. There can be no implication no mutual easement of perpetual support, applicable to future structures.

"In Sherrod v. Cisco, 4 Sandf. 480, it was held that, where a party wall was destroyed by fire, the law would imply no obligation on the adjoining owners to join in rebuilding a new wall, where there was no agreement so to do, the parties being remitted to their original unqualified title up to the division line. And DENIO, C. J., in speaking of that case, declares that he sees no solid distinction between a total destruction of the wall and buildings, and a state of things which would require the whole to be rebuilt from the foundation; that in either case there is great force in saying that the mutual easements have become inapplicable. [Partridge v. Gilbert, 15 N. Y. 601; Kerr on Injunctions, 376.]" (Italics ours.)

In Partridge v. Gilbert, *supra*, l. c. 614, it is said, with reference to a party wall, that the right of one of the adjoining owners to the support of the part of the wall standing on the land of the other owner "existed as long as the wall continued to be sufficient for that purpose and the respective buildings remained in a condition to need and to enjoy that support. When this ceased to be the case, and it became necessary to take down the wall and rebuild the stores, either the

interest of each proprietor in the land of the other ceased with the existence of the state of things which had created it, or each was entitled to call upon the other to contribute towards rebuilding the wall on the same site, and in case of his default to build it himself, and call upon the other owner to reimburse him one-half of the expense. The view of Chancellor KENT was, that the mutual rights of the several owners against each other continued, and that either might rebuild, in case the other refused to cooperate, and claim contribution from the defaulting owner. In a case which was determined in the Superior Court of New York, that court held that the mutual easement ceased with the destruction of the buildings and the wall by fire, and that the respective parties were remitted to their original unqualified title to the division line. [Sherrod v. Cisco, 4 Sandf. S. C. R., 480.] I do not perceive any solid distinction between a total destruction of the wall and buildings, and a state of things which should require the whole to be rebuilt from the foundation. In either case there is great force in saying that the mutual easements have become inapplicable, and that each proprietor may build as he pleases upon his own land, without any obligation to accommodate the other. Circumstances may have materially changed since the adjoining proprietors were content with such walls as would have supported two adjoining dwellings. If the right of mutual support continued, by means of the original arrangement, or by prescription, it is for just such an easement as was originally conceded, or which has been established by long enjoyment. But in the changing conditions of our cities and villages, it must often happen, as it did actually happen in this case, that edifices of different dimensions, and an entirely different character, would be required. And it might happen, too, that the views of one of the proprietors, as to the value and extent of the new buildings, would essentially differ from those of the other; and the division wall, which would suit one of them, would be inapplicable to the objects of the other''.

In Jackson v. Burns, *supra,* two parties (defendant and one Stroup) owned portions of a lot. Each proposed to erect a building on his portion thereof. Thereupon, some agreement was entered into, the exact terms of which did not appear, by which defendant, who needed only a one-story building, should permit Stroup to erect a second story over defendant's building, as well as over the first story of his own building; such second story to be used as a public hall. This arrangement was carried out. Plaintiff, as trustee, was the owner of the interest of Stroup in the entire building or block erected by him in pursuance to the arrangement. It appeared that the foundation walls of the first story in the southeast corner of the building cracked and threatened to give way so that the support which they furnished to plaintiff's portion of the second story over defendant's building would be lost. There was no evidence of any active wrong on the part of the

defendant causing the present condition of the structure. Under such circumstances, plaintiff brought a suit in equity asking that defendant be required "to rebuild and repair said walls in such a manner as they be good and substantial support to plaintiff's said building." The court said, l. c. 622, 623:

"The action which plaintiff seeks to maintain in this case is wholly without precedents, either at law or in equity, and we think that the facts of the case show trat such an action ought not be maintained. It appears from the evidence that the whole building is in a dilapidated condition and that very material changes throughout are necessary to render it a permanently safe and sound structure. If defendant does not desire to restore his walls to a sound and safe condition for his own benefit, he ought not to be compelled to maintain them for the benefit of the plaintiff, in the absence of any express or implied contract on his part. So far as it appears, the plaintiff acquired simply a permissive right in the nature of a license to support his walls on those of the defendant, and he ought not to be allowed to convert this license, though coupled with an interest, into a permanent obligation on the part of the defendant to give perpetual support to the upper portion of the building, regardless of changed conditions. When defendant's walls have, in the course of nature, so far decayed that they no longer furnish adequate support to the portion of the building above, he should have the right to erect a different structure, if he sees fit, and make such use of his premises as he sees fit, regardless of the license which plaintiff may have had to make use of the support of such walls so long as they were sufficient to furnish support."

For other authorities that we have been able to find involving facts similar to the case at bar, or analogous thereto, see Cheeseborough v. Green, 10 Conn. 318; Loring v. Bacon, 4 Mass. 575; Ottumwa Lodge v. Lewis, 34 Iowa, 67, 70; Krueger v. Ferrant, 29 Minn. 385; Heartt v. Kruger, 121 N. Y. 386; Odd Fellows Ass'n v. Hegele, 24 Ore. 16; 9 R. C. L., p. 794; 17 Am. Jur., p. 1003; 2 Tiffany on Real Property (2 Ed.), p. 1349. All indicating that plaintiff is not entitled to recover in a case of this kind.

Plaintiffs cite 2 C. J. S., at page 28, in support of their contention, where it is stated: "The owner of the lower story has the right to make all necessary repairs to protect his walls and preserve his property, and the duty to uphold his story for the support of the upper story. . . . If the lower owner fails to support the upper stories, the upper owner may maintain an action without showing special damage." If it is to be implied from the language used in the above quotation that there is an active duty on the part of the lower owner to support the upper story, then, the text is without any support in the authorities cited to uphold it. In support of these statements the

cases of McConnel v. Kibbe, 33 Ill. 175, and Graves v. Berdan, 26 N. Y. 498, are cited by C. J. S.

The case of McConnel v. Kibbe, *supra*, clearly is not in point for the reason that the owner of the lower story had removed a partition causing the walls to sag and become unsafe. Here was an act of commission, not omission.

In the case of Graves v. Berdan, *supra*, l. c. 501, the court said: "The rule seems to be settled in England, that where a house is divided into different floors or stories, each occupied by different owners, the proprietor of the ground floor is bound, by the nature and condition of his property, without any servitude, not only to bear the weight of the upper story, but to repair his own property so that it may be able to bear such weight. The proprietor of the ground story is obliged to uphold it for the support of the upper story. [Humphrey v. Brogden, 12 Q. B. 739; S. C., 1 Eng. Law and Eq., 241; Rowbothem v. Wilson, 36 id. 236; Harris v. Roberts, 6 El. and Br., 6431 S. C., 7 id. 625.] In the case last cited the duty of such support is recognized as a general common-law right".

This statement contained in Graves v. Berdan was purely *obiter* for the reason that the case merely involved the question of whether rentals could be collected by the landlord from the tenant of the second story when the building had been destroyed. In reference to this case it is stated in Washburn on Easements and Servitudes (3 Ed.), p. 599: "It, however, should be stated, that every case which he (the judge writing the opinion) cites to support his position is one in relation to subjacent support of *land*, which has come to be well-settled law".

These are the only authorities cited by plaintiffs that can be said to be at all in point. The Graves and McConnel cases cannot be considered as any authority in this case and, as the statement in C. J. S. rests upon the authority of these two cases, it is without support. American Jurisprudence states the law to be directly opposite to that stated in C. J. S. See 17 Am. Jur., p. 1003, where it is said: "Although there is some authority to the contrary, as a general rule, the owner of the lower story of a building is under no obligation to keep its walls in repair so as to furnish support for the upper portion, which is owned by another person". In support of the statements in American Jurisprudence that there is some authority contrary to the statement of the law therein set forth, it refers to the annotation in 3 L. R. A. (N. S.), p. 511. The only case to the contrary cited in the notes in 3 L. R. A. (N. S.), p. 511, is Graves v. Berdan, *supra*. In connection with that case the note says: "The first part of this statement, however, was merely a *dictum*, for the real question was as to the right of the lessor of an apartment in the upper story of a building to require the lessee to pay rent after an injury to the building by

fire, so that the lessee's use of the space demised to him became impossible".

However, plaintiffs insist that defendant's neglect of its part of the building was so gross as to indicate a positive intention on defendant's part to destroy plaintiffs' part of the building. We are not concerned with defendant's motives in the premises. [See Am. Jur., pp. 506, 507.]

Plaintiffs cite other cases in support of their contention, including Glover v. Mersmen, 4 Mo. App. 90; Lynds v. Clark, 14 Mo. App. 74; Teepen v. Taylor, 141 Mo. App. 282; Rositsky v. Burns, 221 Mo. App. 993; Rosen v. Kroger Grocery, 5 S. W. (2d) 649.

These cases all announce the rule that a landowner must use his premises so as not to injure the legal rights of his neighbor. Those cases are not in point here, for the reason that, in order to ascertain what are such legal rights, it is necessary to determine what duty defendant owned to plaintiffs. We have held that there is no duty on the part of the defendant to maintain its part of the premises for the benefit of the plaintiffs.

In Kruger v. Ferrant, *supra,* l. c. 388, 389, it is said: "This maxim restrains a man from using his own property to the prejudice of his neighbor, but is not usually applicable to a mere omission to act, but rather to some affirmative act or course of conduct which amounts to or results in an invasion of another's rights. Exceptional cases need not be discussed here. [Pomfret v. Ricroft (note), *supra;* Broom, leg. Max. 366.] In Cheeseborough v. Green, *supra,* the court, while admitting that an action on the case might lie against any one who should suffer his building to become dangerous through decay, denied that the maxim could be carried further in its application, so as to render the owner of the upper story liable to the owner of the lower for want of proper repairs to the roof. [See, also, Pierce v. Dyer, 109 Mass. 374; Coleback v. Girdlers Co., L. R. 1 Q. B. Div. (1875) 234.]

"Walker v. Gilbert, 2 Robt. 214, and Doupe v. Genin, 45 N. Y. 119, are cases similar to the one at bar. In the latter case (page 124) the court very clearly states and distinguishes the rule of liability applicable to this case: 'A man has no right to so construct his building or allow it to be in such a condition as to cause the water which falls upon it to flow upon his neighbor's premises. He is bound to protect his neighbor against injury caused by his own structures.' But, in the absence of contract, he is not bound to replace or repair structures which have fallen into decay merely for the purpose of protecting his neighbor's property, simply because such structures previously afforded such protection."

The judgment is reversed. *Cave, J.,* concurs; *Shain, P. J.,* not sitting.