B. F. STURTEVANT COMPANY v. FORD MANUFACTURING COMPANY, Appellant.

Division One, October 11, 1926.

1. **SALE: Shipment: Reasonable Time: Probable Date: Material Fact: Eliminated by Instruction: Prejudicial Comment.** Statements of the seller as to the probable time of shipment are admissible to show the intention of the parties as to what shall constitute a reasonable time for delivery, and such statements constitute a material fact tending to show what the seller deemed a reasonable time, and are not to be classed by the instructions as mere opinion or expectation. Where the jury were told in one instruction that the question of reasonable time for shipping a machine, ordered by the defendant buyer and to be made and shipped by the plaintiff seller, must be determined by all the circumstances attending the transaction, and the evidence tends to show that defendant was told and advised by plaintiff that the machine would be shipped on or about certain dates, all of which were named and fixed by plaintiff, the first being May 20th, the next July 25th and another August 20th, and the machine was shipped September 12th and arrived on October 18th and was then rejected because not shipped according to orders, another instruction for plaintiff telling the jury that "mere statements made by the plaintiff in letters that it would or expected to complete the shipment on May 20th, or July 25th, or on or about August 20th, were mere expressions of opinion as to when it thought or expected it could make shipment" and that "the mere failure to ship the machine on any of said dates alone will not deprive the plaintiff of the right to recover" the value of the machine, and that "the plaintiff was entitled to a reasonable time in which to ship said equipment after the last request made by the defendant to ship, unless said request did fix or limit the time in which the same was to be shipped," was highly prejudicial to defendant and the giving of it constituted reversible error where the verdict was for plaintiff. Said instruction in effect tells the jury that it was

315 Mo.—65.

immaterial that plaintiff failed to keep the shipping dates fixed by it, and that regardless of other evidence plaintiff still had a reasonable time in which to make shipment.

**2. SALE: Shipment: Acceptance.** Where the case was tried on the theory that the shipment of the machine was made within a reasonable time, and the question of acceptance was not submitted by any instruction asked by plaintiff, and was brought into defendant's instruction only incidentally, without any definition of the word "acceptance," it will not be ruled on appeal that the verdict against defendant should be affirmed on the theory that the evidence shows that the defendant did actually accept and that errors in the instructions relating to reasonable time therefore are immaterial.

**3. ———: ———: Acceptance to Save Demurrage Charges: Contemporaneous Letter: Res Gestae.** A letter written by the buyer, in answer to a written suggestion of the seller that the buyer take the blower from the railroad in order to minimize storage charges, that he had taken the blower for that purpose, but that such act must not be considered an acceptance, the act of removal and writing being contemporaneous, is admissible as res gestae on the question of acceptance.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2608, p. 701, n. 49; Section 3013, p. 1031, n. 31; Section 3019, p. 1038, n. 96. **Sales,** 35 Cyc., p. 120, n. 74; p. 187, n. 82, 84; p. 262, n. 89, 90. **Trial,** 38 Cyc., p. 1651, n. 78 New.

Transferred from St. Louis Court of Appeals.

Reversed and remanded.

*Abbott, Fauntleroy, Cullen & Edwards* for appellant.

(1) A seller delayed an unreasonable time by government intervention cannot sue a buyer for failure to accept when delivery is tendered after the lapse of a reasonable time. Primos Chemical Co. v. Fulton Steel Corp., 266 Fed. 947; Moore & Tierney v. Roxford Knitting Co., 250 Fed. 278; Prescott & Co. v. J. B. Powles & Co., 193 Pac. 681; Newell v. Canning Co., 119 Wis. 635; Remy v. Olds, 21 L. R. A. 645; The Harriman, 9 Wall. 161, 19 L. Ed. 629; Edward Maurer Co., Inc. v. Tubeless Tire Co., 272 Fed. 990; 3 Page on Contracts, sec. 1373; New England Concrete Const. Co. v. Lbr. Co., 220 Mass. 207; Hull Coal & Coke Co. v. Empire Coal & Coke Co., 113 Fed. 256; Roessler v. Standard Silk Dyeing Co., 254 Fed. 777; The Claveresk, 264 Fed. 281; Allanwide Corp. v. Vacuum Oil Co., 248 U. S. 377, 63 L. Ed. 312. (2) Where a specified date is agreed upon, the presumption of law is that time is of the essence of the contract, and is part of the consideration of the contract. Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255; Jones v. United States, 96 U. S. 24; Fountain City Drill Co. v. Lindquist, 22 S. D. 7; Arons v. Cummings, 31 L. R. A (N. S.) 942 and note, 107 Me. 19; Tascott v. Rosenthal, 10 Ill. App. 639; Ramberger Bros. v. Burrows, 145 Iowa, 441; Soper v.

Creighton, 93 Me. 564; Redlands Orange Growers' Assn. v. Gorman, 76 Mo. App. 184; Berg v. Street Ry. Co., 17 Tex. Civ. App. 291; Ellinger v. Comstock, 13 Ind. App. 696; Tobias v. Lissberger, 105 N. Y. 404; Norrington v. Wright, 115 U. S. 188; Arthur v. Wright, 57 Hun, 22, 10 N. Y. Supp. 368; Rockford Knitting Co. v. Moore & Tierney, 11 A. L. R. 1429; Mawhinney v. Milbrook Woolen Mills, 23 N. Y. 290, 15 A. L. R. 1506. (3) Plaintiff did not either allege or prove that it performed the work sued for within a reasonable time, which is a condition precedent to recovery. Griswold v. Scott, 13 Ga. 210; Combs v. Pridemore, 43 S. W. (Ky.) 681; Crawford v. Avery, 35 Miss. 205; Moses v. Banker, 2 Sweeny (N. Y.) 267; St. Louis Steam Heating Co. v. Bissell, 41 Mo. App. 426; Brinkerhoff v. Elliott, 43. Mo. App. 185; Mohney v. Reed, 40 Mo. App. 99; Safety Fund Nat. Bank v. Westlake, 21 Mo. App. 565; Roy v. Boteler, 40 Mo. App. 213; Henning v. U. S. Ins. Co., 47 Mo. 425; Lanitz v. King, 93 Mo. 518; Nichols v. Larkin, 79 Mo. 264; Burlington First Nat. Bank v. Hatch, 78 Mo. 24. (4) Statements of the seller as to the probable time of shipment are admissible as bearing on the issue of reasonable time and for other purposes, and the court erred in excluding the telegrams offered to that effect. 23 R. C. L. 1730; Eppens Co. v. Littlejohn, 164 N. Y. 187, 52 L. R. A. 811. (5) Testimony that the machine was shipped within a reasonable time was inadmissible as invading the province of the jury. Jackman v. Ry. Co., 187 S. W. 786; King v. Mo. Pac., 98 Mo. 236; Davis v. Geiger, 212 S. W. 387; Glasgow v. Railroad, 191 Mo. 347; Deiner v. Sutermeister, 266 Mo. 521; Uhlmer v. St. Joseph, 203 S. W. 216. (6) The court invaded the province of the jury and erred in instructing them that statements by plaintiff that it expected to ship on certain dates was not entitled to any weight. Gage v. Mears, 107 Mo. App. 146; 14 R. C. L. sec. 17, p. 741; Case note, 31 L. R. A. (N. S.) 620.

*Jourdan, Rassieur & Pierce* for respondent.

(1) The appellant accepted the goods, has title and possession, and must pay therefor. (a) The delivery to the carrier f. o. b. Readville, Massachusetts, was with intent to pass the title to appellant and did so. Valle v. Cerre, 36 Mo. 575; Comstock v. Affoeltter, 50 Mo. 411; Bergman v. Railroad, 104 Mo. 77; Scharff v. Meyer, 133 Mo. 428; State v. Rosenberger, 212 Mo. 654. (b) Defendant did not plead a return or tender, and neither proved nor offered to prove such. 38 Cyc. 166; Tyler v. Augusta, 34 Atl. 406; Milliken v. Skillings, 36 Atl. 77; Mundt v. Simpkins, 115 N. W. 325. (c) By returning the bill of lading and by taking the goods from the carrier into its own possession and upon its own premises, after objecting to the time of delivery, appellant confirmed its title and could not

later, nor now, deny it; and appellant must pay the reasonable value thereof. Corby Supply Co. v. Thompson, 186 Mo. App. 95; Stewart v. Sacks, 96 S. W. 1091; American Theatre Co. v. Siegel Cooper & Co., 211 Ill. 145, 4 L. R. A. (N. S.) 1167; Dalton v. Bunn, 137 Ala. 175; Mackey v. Schwartz, 15 N. W. 576; MacDonald Foundry Co. v. Glacier Metal Co., 69 So. 769.. (d)  The statement that it took the blower to avoid storage charges is an affirmance of the sale, since appellant was not liable for storage charges to the carrier, but was liable to respondent if respondent were compelled to pay them. Railroad v. Luella Co., 52 L. R. A. (N. S.) 398; Sheridan v. Penn Collieries, 128 Fed. 204; Jelks v. Phila. Railroad Co., 80 S. E. 216.  (e) Respondent was entitled to a directed verdict; the matter of amount of recovery was fairly submitted to the jury and its verdict conclusive; and the case need be no further considered.  The submission of other issues was too favorable to appellant and it cannot complain with respect thereto.  (2)  The goods sold and delivered were furnished in a reasonable time.  (a) The fact that government intervention lengthened the time required does not discharge the parties, because this was a contract to be performed in a reasonable time. Mal-Gra Castings Co. v. National Brass Mfg. Co., 13 Ohio App. 49; Empire Transp. Co. v. Phila. Co., 35 L. R. A. 623; Acme Tr. Co. v. 133,000 Bushels of Wheat, 243 Fed. 970.  (b) The jury had the right to find that under the circumstances of government interference the time was reasonable.  Mal-Gra Castings Co. v. Nat. Brass Mfg. Co., supra.  (c)  The question of the time as reasonable or unreasonable was for the jury.  Ellis v. Thompson, 3 M. & W. 445; Dunn v. Mayo, 134 Fed. 804; Henkle v. Smith, 21 Ill. 238; Kriete v. Meyer, 61 Md. 558; Joseph v. Andrews Co., 72 Mo. App. 551; Berthold v. St. Louis Constr. Co., 165 Mo. 280; Cousins v. Bowling, 100 Mo. App. 452.

SEDDON, C.—This cause comes to this court upon certification from the St. Louis Court of Appeals, because of the dissenting opinion of one of the judges of that court.  Plaintiff, respondent here, had verdict and judgment in its favor in the circuit court, which judgment was affirmed by majority opinion of the St. Louis Court of Appeals.  The majority opinion of that court is reported in 253 S. W. 76, while the dissenting opinion of Judge ALLEN is reported in 254 S. W. 419.

Plaintiff's petition was originally cast in two counts.  The first count was founded upon special contract and was dismissed by plaintiff before submission of the cause to the jury.  The second count of the petition, upon which the cause was submitted, is as follows: "For cause of action by its second count plaintiff states: That it and defendant are corporations.  That on or about the 12th day of September, 1918, at the special instance and request of the defendant,

it manufactured and delivered free on board at Readville, Massachusetts, 'one (1) No. 8 Positive Type Pressure Blower and one (1) 16" High Pressure Type blast gate or air valve, furnished with a 16-inch-face pulley,' and paid out and expended, at the request of the defendant, the sum of $46.66 as freight and transfer charges, and taxes thereon, in shipping said equipment to the defendant at Vandalia, Illinois, all of which charges were reasonable and necessary to accomplish said shipment. That the reasonable value of the work and labor and services rendered and performed in manufacturing and delivering said equipment free on board at Readville, Massachusetts, was the sum of $2184, and that this charge, plus $46.66, as above set forth, makes a sum total of $2230.66 due the plaintiff, which the defendant promised to pay the plaintiff. That on or about October 28, 1918, after said sum became due as aforesaid, the defendant, upon demand being made therefor, refused to pay plaintiff. Wherefore, upon its second count, the plaintiff prays judgment against the defendant for the sum of $2230.66, with interest from October 28, 1918, together with its costs herein.'' The answer is a general denial.

Plaintiff is a manufacturer of fans, blowers and similar appliances, having its principal office and factory at Hyde Park, a suburb of Boston, Massachusetts. It has branch, or district, offices in several of the large cities of the United States. One of plaintiff's district offices is located in St. Louis, Missouri, and, during the year 1918, was in charge of Victor E. Hugoniot, as manager of said office. Defendant is a manufacturer of roofing material with its principal office in St. Louis, and a factory at Vandalia, Illinois.

On February 28, 1918, defendant wrote to plaintiff's St. Louis office: ''We are in the market for two Sturtevant blowers to be used for blowing asphalt. We would like very much to have you send your representative to Vandalia to go into this matter with us.'' Pursuant to that request, plaintiff's representative, Mr. Hugoniot, went to Vandalia, Illinois, and conferred with defendant's officers concerning the inquiry.

On March 7, 1918, plaintiff's representative, Hugoniot, wrote defendant: ''I am unable to advise you definitely in regard to shipment at this time, but I wired our factory on my return from Vandalia last night and requested that they wire me back. However, I feel very certain that we can ship you a No. 8 blower in about eight or ten weeks after receipt of order at the factory. I am sure that I will have this information, however, on Monday.''            ,

On March 18, 1918, defendant sent to plaintiff's St. Louis office a written order (upon one of defendant's order forms), as follows:

"Vandalia, Ill., March 18, 1918.

"B. F. Sturtevant Company,

"St. Louis, Mo.

"Ship to Ford Mfg. Co. at Vandalia, Ill.

"How Ship: Local Freight. When: At once.

| "Quantity. | Description. |
|---|---|
| 1 | No. 8 Blower. |
| 1 | Air Valve. |

"(Per your quotation to Mr. L. M. Ford. This order confirms order given you by Mr. Ford over the 'phone.)

"Please render invoice promptly after making shipment.

"Notify us at once if there is any portion of the above order you cannot fill promptly."

The foregoing written order was received at plaintiff's St. Louis office on March 19, 1918, and was forwarded to and received at plaintiff's factory at Hyde Park, Massachusetts, on March 23, 1918. Plaintiff's St. Louis representative, by letter dated March 19, 1918, acknowledged receipt of defendant's written order, stating therein: "Please note that we will invoice you for this material in the amount of $2090, which covers both blower and valve, f. o. b. car our factory, Readville, Mass. Terms of payment are sixty days net cash and we will allow a discount of $40.94 for payment ten days after receipt of material. Please note that owing to present business conditions no cancellation of orders will be accepted."

About one month after giving plaintiff the written order for the blower, defendant requested a change in the order by adding a 16-inch-face pulley to the blower ordered. Relative to the change requested by defendant, plaintiff's St. Louis representative wrote to defendant on April 17th, as follows: "As the writer has advised you by phone it will be necessary for us to make a charge which our factory estimates will be in the neighborhood of $100, which is necessary, due to the fact that we will have to change our patterns on the blower base, making also a new pattern to allow for a greater shaft extension and a wider-faced pulley. We will advise you as soon as we have accurate advice as to the exact charge that will be made for this work. We understand this has your approval and we wish you would kindly acknowledge this letter signifying to that effect. In the meantime, however, we have wired our factory to proceed with this work so that the delay occasioned by this change may not be any longer than is necessary."

Defendant replied on April 18th as follows: "Answering yours of the 17th, you can consider this letter as your authority for changing the blower which we have ordered from you so as to furnish a 16-inch-face pulley, extra charge not to exceed $100. It is understood that if the cost is any less than that, we will get the benefit of same. Please

advise us as soon as possible just when this blower will be shipped. We are now ready for it, and anything you can do to hurry it along will certainly be appreciated.''

On May 7th plaintiff sent to its St. Louis representative, Mr. Hugoniot, an inter-office communication, reading as follows: ''In reply to your letter of the 19th ult., we beg to inform you that we will keep our shipping date given, namely 5/20/18. Works Priority Committee.'' Mr. Hugoniot testified that he ''presumed'' that he communicated that fact to defendant, and defendant's president, when asked if Hugoniot had shown to him the communication, answered, ''Yes, I am pretty sure that he did show that to me.'' Shipment of the blower was not made on May 20, 1918. Defendant's president testified further that Hugoniot subsequently informed him that shipment of the blower would be made on July 1st, and, when the blower was not shipped on that date, Hugoniot then said that shipment would be made on July 25th. On July 23rd, defendant wrote to plaintiff at its principal office: ''Referring to the blower which we have ordered from your company for our Vandalia plant. We were advised by your St. Louis office that shipment of this machine would be made on July 25th, which is Thursday of this week. We called the St. Louis office on the telephone today, but were unable to get in touch with your representative, and are therefore addressing you in regard to the matter to let you know that we shall expect shipment of this machine on July 25th, as promised, and we sincerely trust that you will not disappoint us.''

On July 25th defendant telegraphed plaintiff: ''Was our blower shipped today? Wire answer,'' and on July 27th defendant again telegraphed plaintiff: ''Reply to our wire twenty-sixth. Has blower been shipped?'' On July 27th plaintiff answered by telegram: ''Due to flaw in casting, cannot ship blower till August 20th.'' On July 27th plaintiff wrote to defendant: ''We are in receipt of your letter of July 23rd, and will say that we had this blower assembled, and practically ready to test, when we discovered a flaw in one of the castings, and this had to be rejected. This means that a new one has got to be made up and machined, and we regret that, under the present indications, this will delay shipment until about August 20th. We regret this as much as you do, as we have counted on getting this out of our way, so as to make room for other work, but with the flaw in the casting, which we discovered after the blower was nearly assembled, we did not dare to make shipment.''

On July 29th defendant wrote plaintiff: ''Your wire 28th, stating that you cannot ship blower until August 20th, on account of a flaw in casting. We cannot understand why it should require more than three weeks for you to produce a new casting for this blower. Shipment of this blower has been put off on several oc-

casions for reasons of one kind or another, and we feel that it is about time you are getting action on this matter. You have made us numerous promises regarding the shipment of this blower, but so far none of them have materialized, and we feel now that you should make some special effort to give us a little service on this order. In view of the fact that you have had this order a long time, and that shipment of same was promised to us on several occasions, we believe that your company should take immediate action to have the necessary castings made and machined and not put the matter back at the end of the line to wait its turn to be handled once more. Sincerely trusting that you will go into this matter and make a strenuous effort to get this machine off to us in the next few days, we are," etc.

Plaintiff replied, on August 1st, by letter: "Referring to your valued letter of July 29th, we are doing everything we possibly can to push ahead the positive blower on your order. The particular casting that proved defective was the impeller, and this, as you doubtless know, is a casting that takes some time to make, and a casting which takes a considerable time to machine. We are pushing this along as quickly as possible, and assure you that no other commercial work is going ahead of it."

On August 9th defendant wrote plaintiff: "We have your letter of August 1st, in which you say that you are doing everything possible to push the work on our blower for Vandalia. We are certainly glad to learn that you are going to do all you can to get this blower off to us at an early date. We are holding up some very highly important work in our plant at Vandalia at this time, awaiting the installation of this machinery, and while we do not wish to cause a lot of unnecessary correspondence between us and your office, we are in such desperate need of this machine that we trust that you will appreciate our position in the matter and realize how necessary it is for us to secure this machine at the earliest possible moment. Trusting that you will push this work, with all possible speed, we are," etc.

On August 16th defendant wrote plaintiff: "Again referring to the blower which you are making for us, for our Vandalia plant. According to your letter of July 27th, this blower is intended to be shipped about the time this letter reaches you. We certainly trust that you will let nothing interfere with the shipment of this machine on schedule time. We have been greatly inconvenienced in having to wait for same for such a long time, and while we appreciate the difficulty which you have had, our need of this machine is so great that we must request you to push the delivery of it as rapidly as possible."

Plaintiff replied, on August 22nd as follows: "Replying to your letter of August 16th, regarding shipment on the No. 8 High Pres-

sure Blower on the above order, we are sorry to have to advise you that this blower has not been shipped as yet. The difficulty is that we have been unable to machine the impeller casting, which we wrote you about August 1st. This machine work is done with the same machine tools as are being used on the Emergency Fleet and Destroyer Program. The demands for this program have been more severe than usual during the last few weeks, and we have not had an opportunity to machine this impeller. However, our production department has gone over this situation carefully, and they state that we will be able to get this impeller machined, so as to make shipment by September 10th. We realize that these delays are very annoying to you, but our hands are tied to such an extent with this Government work that we cannot avoid them." On August 23rd, plaintiff telegraphed defendant: "Expect to ship number eight blower September tenth. Wrote you yesterday."

The blower was tested at plaintiff's factory on September 10th and shipment was made from Readville, Massachusetts, the railroad station at plaintiff's factory, on September 12, 1918, the blower and equipment being loaded upon a car, together with other machinery, so as to make a carload shipment, and consigned by plaintiff to itself at Chicago, Illinois. It was stipulated by the parties: "That, on October 9, 1918, the blower and equipment mentioned in plaintiff's petition arrived at Chicago, Ill., in Pittsburgh & Lake Erie car No. 44351; that on said day it was by a Chicago transfer company delivered to the United States Railway Administration in charge of and operating the Illinois Central Railway Company, duly marked and consigned to defendant Ford Manufacturing Company at Vandalia, Illinois; that thereafter the same was delivered at Vandalia, Illinois, at the Pennsylvania Railroad Station on October 18, 1918. That the bill of lading in favor of the Ford Manufacturing Company covering said shipment was duly transmitted to the defendant Ford Manufacturing Company. That the freight charges, amounting to $38.50; transfer charges at Chicago, amounting to $7, and war tax thereon, amounting to $1.16, making a total of $46.66, were reasonable and necessary charges paid out and expended by the plaintiff in procuring and causing said shipment to be delivered to the defendant, Ford Manufacturing Company, after said equipment had been delivered f. o. b. Readville, Massachusetts."

The blower and equipment arrived at Vandalia, Illinois, on October 18, 1918. The railroad carrier advised plaintiff, on October 19, 1918, as follows: "We have a shipment consisting of one blower consigned to Ford Mfg. Co. of this city, which they refused. You billed this shipment on October 9, 1918, their way bill No. 9063. Refused because not shipped when ordered. Please advise disposition as car service is accruing daily." Thereupon, plaintiff's western manager

at Chicago wrote the railroad carrier, on October 21, 1918, acknowledging receipt of the carrier's advice of October 19th and stating: "We immediately wired the Ford Manufacturing Company to this effect, suggesting that they take the blower at once and avoid further expense, since it is their property; I know of no reason why they should refuse to accept it. In the meantime I cannot see that there is anything for you to do other than to hold it subject to their order." A copy of said letter was sent to defendant on the same date. On October 21st plaintiff telegraphed defendant: "Pennsylvania Railroad advises you refuse blower shipped your order. Demurrage charges accruing daily. Order taken subject no cancellation. Advise you accept shipment immediately avoid additional expense." On October 10, 1918, a few days before the arrival of the blower at Vandalia, defendant wrote to plaintiff's St. Louis representative, Mr. Hugoniot, as follows: "Referring to our conversation regarding the blower that was supposed to have been shipped several weeks ago to Vandalia, Ill. We have taken the matter up with the Vandalia plant and they advise they have received no papers indicating that this blower has been shipped. Will you kindly give us a copy of the bill of lading covering the shipment if you are in possession of same?"

Defendant's president testified at the trial:

"Q. When did you first learn that they did ship? A. Not until, I think it was, along about October 10th.

"Q. How did you learn that? A. Well, Mr. Hugoniot called up on the telephone and he also came in the office and told us that he had just been advised by his Chicago office that the blower had been shipped on October 9th, the day before he was there, I think—or the same day.

"Q. And what did you say to him at that time? A. Well, we told him he had no authority to ship it, the order had been canceled and we didn't know why they had shipped it; we had not received any shipping forms on it; if we had we would have sent them back long ago; asked him to furnish date shipment was made and asked him to furnish bill of lading; we asked him when shipment was made; he said he did not know when it was made.

"Q. Was the letter of October 10th afterwards written by your direction to ascertain the date of shipment? A. Yes, sir, and then we received the bill of lading showing it was shipped on October 9th out of Chicago."

Witness testified further:

"Q. You have never used the machine? A. No, sir, it is intact just as it arrived there. It was held by the railroad company for a number of days on the platform.

"THE COURT: Q. Where is it now? A. It is in one of our warehouses. We had it switched out to our plant, and it is in one of our warehouses, intact; just as it was; never been moved."

The testimony is sharply conflicting as to what occurred between plaintiff and defendant after August 20, 1918. Defendant's officers admitted by their testimony that no further or subsequent communication was had by defendant with plaintiff's principal office and factory at Hyde Park, Massachusetts. Neither did defendant make any written reply to plaintiff's letter of August 22, 1918, which advised defendant that the blower had not then been shipped, but that plaintiff would be able to get the impeller machined so as to make shipment by September 10th, nor did defendant reply to plaintiff's telegram of August 23d to the same effect. Defendant's president testified:

"Q. Now as to this letter of August 22nd, did you make any written reply of any kind to the Sturtevant Company at Boston? A. I don't think we did.

"Q. You know that you didn't give them any written cancellation of this order to the Boston office, did you? A. No, sir; I don't think we did; we had all our dealings with Mr. Hugoniot."

Defendant's officers testified that, when shipment had not been made by August 20th, they told plaintiff's St. Louis representative, Mr. Hugoniot, on or about August 21st or 23rd, that defendant could not wait any longer for the blower, that defendant would not take the blower and thereupon advised Mr. Hugoniot that defendant canceled the order therefor. Mr. Hugoniot, on the other hand, denied that defendant's officers had told him that defendant would not take the blower or that defendant had advised him that it considered the order canceled or had canceled the order.

The evidence tends to show that early in August, 1918, defendant made efforts to find and purchase two second-hand or used blowers. Defendant learned that there was a used blower somewhere in Kansas and procured the services of plaintiff's representative, Mr. Hugoniot, who went to Kansas and inspected the blower for defendant, resulting in an order by defendant for the used blower, on August 10th, which order, however, was subsequently canceled by defendant. Defendant paid the expenses of Hugoniot on that inspection trip. Hugoniot appears to have made the trip as defendant's agent and not as the representative, or agent, of plaintiff. Later in August, defendant entered into correspondence with the Power Equipment Company of New York, looking to the purchase of two used blowers, which resulted, on August 26, 1918, in defendant ordering from the Power Equipment Company two used No. 9 Sturtevant positive pressure blowers. It also appears that Hugoniot procured the assistance of plaintiff's New York office in inspecting those two used

blowers. On August 19th, Hugoniot telegraphed plaintiff's New York office, as follows: "Ford Manufacturing Company, St. Louis customer of ours, making deal with Power Equipment Company, New York, on number nine positive blower. Cannot wait our shipment. One of our blowers for them shipped today but need another. Can you consistently inspect and advise us condition." Hugoniot, in explaining the use of the words "cannot wait our shipment," testified that defendant wanted another or extra blower, in addition to the new blower it had ordered from plaintiff, and that his telegram meant that defendant could not wait for shipment of another, or additional, new blower.

On August 29, 1918, defendant wrote to plaintiff's New York office concerning the inspection of the used blowers, as follows: "On August 27th you made a report to the St. Louis office of the B. F. Sturtevant Company, on two positive pressure blowers which we were figuring on buying from the Power Equipment Company of New York City. . . . The situation is this: These blowers were offered to us as No. 9 Sturtevant positive pressure blowers, all necessary repairs to be made, and blowers to be in first-class condition, price $550 each. Now, we are very badly in need of these blowers, and it is impossible to get delivery on new blowers from the Sturtevant Company for several months. We have purchased new equipment of this kind from your company in the past. In fact, we have an order on file now with them for a No. 8 blower which should have been delivered to us three or four months ago. The price of these two blowers that they offer is very low, and even if they were not in first class condition, they no doubt would answer our purpose for some time and until we could get new equipment. We would greatly appreciate it if you would give us a more detailed report on the condition of these blowers. . . . We assume that it takes a little time to get the repairs made, and we would like to have a further complete report from you in the meantime, on these blowers, before we have them shipped. As stated above, we are old customers of the Sturtevant Company, or we would not expect you to inconvenience yourselves to this extent. We certainly will appreciate your accommodating us in this manner."

Defendant's president testified that, about August 29th, defendant had taken up the matter of shipment of *new* blowers with other manufacturers and that those manufacturers wanted about six months in which to make delivery of *new* blowers.

Plaintiff, for the purpose of explaining the delay in shipment and to show that shipment was made within a reasonable time, adduced evidence that Hugoniot, prior to the placing of defendant's order of March 18th, had told defendant that the blower and equipment were not kept in stock by plaintiff, but would have to be manufactured, or

made up, by plaintiff according to specifications; that the change in the order requested by defendant on or about April 17, 1918, necessitated a change in the patterns for the equipment and resulted in delay, and that Mr. Hugoniot told defendant that the change would make some delay in the shipment; that, during the period of the manufacture of the blower, plaintiff, under the requirements of the National Defense Act of June 3, 1916 (39 U. S. Stat. 166), was engaged in war work on the demand of the national government, which required plaintiff to manufacture certain equipment for the Navy Department and the Emergency Fleet Corporation to be used in the war emergency program; that the government officers and inspectors in charge of such work in plaintiff's factory would not permit the use of plaintiff's factory organization, equipment and machinery in filling commercial or civilian orders, except at such times as would not interfere with the government war requirements; that eighty to ninety per cent of the work turned out by plaintiff in 1918 was government work; that defendant, although it had told Mr. Hugoniot that it had an automatic priority rating, had never furnished plaintiff with a government "priority order," which would or might have given defendant's commercial order precedence over the war work required of plaintiff by the national government; that, after the casting of the blower had been made, a flaw, or "blowhole," was discovered in the casting, which necessitated the making of a new casting and that such flaws are not capable of being foreseen and' are not discoverable until the casting comes out of the mold and cools, and oftentimes the "blowhole" is not apparent from the surface until the casting is machined into shape; that whenever plaintiff's machinery and employees were free from government war work, they were used in getting out the commercial work; and that the commercial work, including defendant's order, was carried out as speedily as the government war work permitted. Plaintiff also introduced evidence that the reasonable value of the blower and equipment manufactured and shipped to defendant was $2090 and that the reasonable value of the special pulley and base was $94. Demand of payment was made on October 28, 1918, and defendant refused payment. The jury returned a verdict for plaintiff in the aggregate sum of $2319.82, judgment was entered thereon, and from that judgment defendant appeals.

I. The cause was submitted to the jury upon the issue whether delivery of the blower was made within a reasonable time under all the facts and circumstances in evidence. In the course of the trial, plaintiff took the position that, although defendant's original order of March 18, 1918, specified that the equipment was to be shipped "at

once," nevertheless defendant, by its subsequent conduct in modify-
ing the order and in requesting delivery of the
**Reasonable**     equipment, had waived said requirement of the
**Time: Probable**  order; that no definite or fixed time of delivery was
**Date.**           thereafter specified, and hence the law implies that
delivery shall be made within a reasonable time.  It was defendant's
theory, on the other hand, that delivery was not made within a rea-
sonable time.   The parties offered evidence tending to support their
respective theories and positions.

The trial court gave certain instructions on behalf of plaintiff, one
of which, in substance and effect, told the jury that, if they found
that, on or about September 12, 1918, at the special instance and re-
quest of defendant, plaintiff had manufactured and delivered, f. o. b.
at Readville, Massachusetts, the blower in question within a reason-
able time, after the defendant had requested same to be done, their
verdict should be for plaintiff for the reasonable value of the blower
and equipment, together with the reasonable freight and transfer
charges and taxes expended and paid out by plaintiff.   The court
further instructed the jury, at plaintiff's request, that what is a rea-
sonable time must be determined from all the circumstances attend-
ing the particular transaction, such as the character of the goods or
equipment ordered, the changes made in the goods ordered, the
purposes for which they were intended, the ability of plaintiff to
manufacture the same, and the facilities of plaintiff available for
such purposes, which were known to defendant, and, in addition to
such matters, that the jury should take into consideration the fact
that the United States government was at war with the German
Empire and that, in time of war, the President of the United States,
through the head of any department of the government, is empow-
ered to place an order with any manufacturing industry for such
products as are required by the government, and that compliance
with all such orders are obligatory on such manufacturing industry,
and all such orders shall take precedence over all other orders and
contracts theretofore placed with such manufacturing industry.

The trial court gave certain instructions at request of defendant,
submitting its theory.   One of defendant's instructions, in substance
and effect, directed the jury to find for defendant if they believed
that the blower was not shipped by plaintiff within a reasonable
time after the order was given and defendant refused to accept it
when delivered.   Another of defendant's instructions told the jury
that if the shipment was delayed an unreasonable length of time,
whether said delay was caused by plaintiff being engaged in war work
or otherwise, defendant was not required to keep its order outstand-
ing after the lapse of a reasonable time and then accept shipment of
the machinery, but, after the lapse of a reasonable time, defendant

had the right to withdraw its order and obtain its requirements elsewhere, and if, after the lapse of a reasonable time, defendant advised plaintiff's St. Louis representative that it would not receive the machinery ordered, and at said time the machinery had not been completed, then plaintiff could not recover in this action. Another of defendant's instructions told the jury that, if they believed that the blower had not been completed on or about August 20th, and that before it was completed plaintiff was informed that defendant would not take the blower, then plaintiff had no right to proceed with any further work on the blower and is not entitled to recover anything on account of any work done thereon after said notice.

One of the errors assigned by appellant as reversible error is the giving by the trial court of plaintiff's Instruction 3, which is as follows: "The court instructs you that mere statements made by the plaintiff in letters to the defendant that it would or expected to complete the shipment of the equipment in question on May 20th or July 20th, or on or about August 20, 1918, were mere expressions of opinion as to when it thought or expected it could make shipment. The mere failure to ship the apparatus on any of said dates alone will not deprive the plaintiff of its right to recover herein. The plaintiff was entitled to a reasonable time in which to ship said equipment after the last request made by the defendant to it to ship the same, unless said request of the defendant did fix or limit the time in which the same was to be shipped, in which event it would have to be shipped within the time so limited."

Defendant contends that the foregoing instruction invaded the province of the jury and is an unwarranted comment upon detached portions of the evidence. The majority opinion of the St. Louis Court of Appeals (253 S. W. l. c. 80) expresses the opinion that, although the instruction did invade the province of the jury, nevertheless, under the facts of the case, the giving of the instruction was not reversible error, because it appeared that defendant had waived its right to claim that the goods must be shipped upon the dates named in the instruction, unless it be the date of August 20th, inasmuch as it appears that, as late as August 16, 1918, defendant wrote to plaintiff urging shipment of the equipment. Judge ALLEN of that court filed a vigorous dissenting opinion (254 S. W. 419), in which he states the reasons for his dissent and requests that the cause be certified to this court because he deems the decision of the majority to be in conflict with certain decisions of this court.

We have carefully examined and considered the instruction complained of and have reached the conclusion that the instruction was highly prejudicial to defendant and that the giving of the same constitutes reversible error. The jury were told in another instruction that the question of reasonable time must be determined from all

the circumstances attending the transaction. The evidence tends to show that defendant, either through plaintiff's St. Louis representative or by written communication from plaintiff's factory, was told and advised by plaintiff that the blower would be shipped on or about certain named dates, all of which dates were named or fixed by plaintiff, the first date named being May 20th, the next date being July 25th, and another date being August 20, 1918. No one was better informed as to plaintiff's ability and facilities for manufacturing the equipment and the time within which the equipment could or would be shipped than plaintiff itself. It appears to us that plaintiff's own statements as to the probable dates of shipment constitute a very material fact or circumstance attending the transaction as tending to show what plaintiff deemed a reasonable time within which delivery should be made. In 23 Ruling Case Law, page 1370, sec. 193, it is said: "Although evidence of a contemporaneous oral agreement that the subject-matter of a written contract of sale is to be delivered at a specific time is inadmissible to establish the time of delivery, since the law implies delivery to be within a reasonable time, by the weight of authority this implication is one of mixed fact and law, and as bearing thereon and tending to establish what is a reasonable time, extrinsic evidence of all the surrounding facts and circumstances, including the declarations and conversations of the parties and any parol agreement between the parties as to a specific time of delivery, is admissible. *So statements of the seller, or his agent through whom the sale was made, as to the probable time of shipment, have been held admissible to show the intention of the parties as to what should constitute a reasonable time for the delivery.*"

In Eppens Co. v. Littlejohn, 164 N. Y. 187, it is held that a statement by plaintiff's agent, when making the contract of sale, that he had no doubt that the shipment would be made during certain specified months, may properly be considered by the jury in determining what was a reasonable time in which to make the shipment, since it would tend to show about what the parties understood the reasonable time of shipment to be, although it would not fix the exact time.

Even though defendant, by its acts and conduct, shall be deemed to have waived the right to complain of the failure of plaintiff to ship the blower on May 20th, or on July 25th, nevertheless it was within the province of the jury to determine, under other instructions given in the case, whether a reasonable time had elapsed on August 20th, unless it be that defendant can be said to have waived shipment on the latter date by reason of its letters of August 9 and 16, 1918. Defendant's letter of August 9th merely called plaintiff's attention to the fact that defendant was in desperate need of the machine, stating that defendant trusted that plaintiff would appreciate defendant's position and realize the necessity of defendant's

request that the machine be shipped at the earliest possible moment and that plaintiff would push the work with all possible speed. Defendant's letter of August 16th, after calling attention to plaintiff's statement or promise that the blower would be shipped on or about August 20th, expressed the hope that, plaintiff would let nothing interfere with shipment of the machine on *schedule* time and urged plaintiff to push delivery as rapidly as possible. We cannot say, as a matter of law, that those letters constituted a waiver of shipment on August 20th, or operated as an extension of time of shipment beyond that date. We think that it was for the jury to say, under all the facts and circumstances in evidence, whether shipment was made within a reasonable time. Although the jury had been told in other instructions that what was a reasonable time for shipment must be determined from all the circumstances in evidence, nevertheless the court, by plaintiff's Instruction 3 (as Judge ALLEN remarks in his dissenting opinion), "tells the jury, in effect, that it mattered not at all that the plaintiff failed to keep its shipping date thus finally fixed by it; that regardless of all other evidence in the case plaintiff still had a reasonable time in which to make shipment." [254 S. W. 1. c. 420.] The trial court could not have told the jury more positively than was done in that instruction that the statements of plaintiff respecting the probable dates of shipment were of little or no weight in determining what was a reasonable time of shipment. The instruction commented out of the case the statements made by plaintiff as to when it would probably make shipment, which statements, as we have said, the jury had the right to consider and weigh as tending to show what plaintiff deemed a reasonable time for delivery. As said in 14 Ruling Case Law, 741: "To weigh the evidence in any case is the province of the jury, and that province is invaded by the court whenever it instructs them that any particular evidence which has been laid before them is or is not entitled to receive weight or consideration from them." And in 14 Ruling Case Law, 746, the rule is stated: "The court should not charge the jury as to the conclusion which they should reach on the testimony introduced, or as to the inference of fact which they should draw from other proven facts."

In an early case, Forrester v. Moore, 77 Mo. 651, we said: "It is the recognition of this province of the jury that has so repeatedly and persistently induced our courts to pronounce against instructions commenting on the evidence, or singling out one or more facts of the case and directing the attention of the jury that way—and this for the reason that such instructions unduly influence from the bench the judgment of the jury, and tend to substitute for their estimation and analysis of a given fact, the mental and moral bent of the judge. If this may be done in one case, it can in another, until the judge

315 Mo.—66.

from the bench will invade the jury box and displace the twelve triers of the facts." Instructions of similar purport, commenting upon detached portions of the evidence, have been repeatedly condemned by this court and held to be reversible error. [Keppler v. Wells, 238 S. W. 425; Burton v. Holman, 288 Mo. 70; Littig v. Heating Co., 292 Mo. 226; and other cases cited in those decisions.] The giving of plaintiff's Instruction 3, in our opinion, constituted reversible error.

II. Respondent urges, however, that defendant accepted the equip ment, and, having accepted the equipment, defendant is therefore bound to pay the reasonable value thereof, which value was determined by the jury under a proper instruction upon the **Acceptance.** measure of recovery. Hence, it is insisted by respondent that the question of reasonable time of delivery becomes an immaterial issue in the case and error in the giving of instructions upon that issue is not material to the merits, the judgment being clearly for the right party. Appellant, combating this contention, insists that the cause was tried below on the theory that there had been no acceptance of the equipment by defendant; and, furthermore, that the issue whether or not there had been an acceptance of the equipment by defendant is one of fact and that issue was not submitted to the jury.

The record is somewhat confusing respecting the theory of plaintiff as to the question of acceptance of the equipment by defendant. During the course of the trial, objections were made by defendant to the testimony proffered by plaintiff tending to explain the delay in shipment and tending to show that the delay was occasioned, in part at least, because of the fact that plaintiff's factory organization was engaged in manufacturing war materials under the orders and requirements of the national government. Thereupon the following colloquy occurred:

"THE COURT: I understand they claimed that the article was delivered; the blower was actually sent them.

"PLAINTIFF'S COUNSEL: It was actually sent, and they have it now. That is my position. On a *quantum meruit* count we would not have to plead anything except they requested it and promised to pay it. All of the transactions between the parties are competent.

"THE COURT: The first count is also based on the theory the material having actually been sent them.

"PLAINTIFF'S COUNSEL: The first count is an express contract.

"THE COURT: Which you claim you fulfilled by sending the goods.

"PLAINTIFF'S COUNSEL: Yes.

"THE COURT: You may proceed. I will overrule the objection.

"DEFENDANT'S COUNSEL: That being the theory, that it was

shipped and delivered and accepted by us, testimony as to why the delay becomes wholly immaterial.

"THE COURT: How is all this material? If you shipped the goods and they accepted it, what difference does it make whether there was any delay or not?

"PLAINTIFF'S COUNSEL: *We don't charge in our petition they accepted them; we only charge we shipped them at their request. We haven't sued on the theory they have accepted them. As a mat-ter of fact, they accepted them under protest; that is the reason why I couldn't sue that way. I haven't sued on the theory they have accepted them.*"

Later in the trial, defendant offered in evidence certain letters written and sent by defendant to plaintiff, in which defendant stated in substance that, while defendant had received, or taken in, the blower in order to prevent the accumulation of storage and demur rage charges, such action upon defendant's part was not to be taken as an acceptance of the blower, but defendant was simply holding it subject to plaintiff's orders, and requesting plaintiff to advise what disposition was to be made of the blower. Plaintiff's counsel objected to the introduction of the letters in evidence, as follows: "Now, if the court please, I object to those. They are qualifying statements as to the manner in which he accepted it, and the qualification is purely self-serving and without our consent. We have always insisted it was their property. He can't say he accepts it, but refuses to take it because it was not shipped in time. If it was not shipped in time it was not his property in the hands of the railroad at Vandalia, and he didn't have any occasion to save any expenses, and that is purely a voluntary act on his part in taking it, and he can't, by writing a letter, change the law or the facts."

The action of the trial court in permitting the parties to introduce a considerable amount of testimony bearing upon the reasonableness of time of delivery rather indicates, to our minds, that the trial court adopted the theory that the issue or question of acceptance was not in the case, the trial court's action in that respect apparently being influenced or controlled, to some extent, at least, by the statement of plaintiff's counsel that plaintiff "hasn't sued on the theory they have accepted." When plaintiff came to submit its theory of recovery to the jury, it requested, and the court gave on its behalf, several in-structions, all of which are hypothesized upon the fact that ship-ment or delivery of the equipment was made within a reasonable time. But, by none of its instructions did plaintiff present or submit the issue of acceptance or ask the finding of the jury thereon. It has repeatedly been announced by this court that parties are bound on appeal by the theory of recovery adopted by the parties and by the court in the trial below. [Hill v. Drug Co., 140 Mo. 433; Taylor &

Sons Brick Co. v. Railway Co., 213 Mo. 715; Degonia v. Railway Co., 224 Mo. 564.]

But plaintiff, although conceding that it did not submit the issue of acceptance by its own instructions, urges that such issue was submitted to the jury by defendant's given Instruction 6, which is as fol lows: "The court instructs the jury that if from the evidence you believe that the blower ordered by the defendant from the plaintiff was not shipped to defendant within a reasonable time after the order was given, and further believe that defendant refused to accept it when delivered, then you will find for the defendant." Hence, respondent apparently contends that the verdict of the jury is conclusive upon the issue of acceptance.

However, from the condition and state of the record before us, we think that it is quite improbable that the jury knew or understood that they were called upon to pass on the issue or question of acceptance, or that they were determining such issue in returning a verdict. All the other instructions given to the jury for their guidance directed their attention to the single and sole issue of reasonableness of the time of delivery, and much, if not most, of the evidence adduced pertained to the single issue of reasonableness of time of shipment. The term "acceptance," as applied to the law of sales, has a peculiar and technical meaning, which the lay minds of the jury would not likely comprehend unless the legal use and technical meaning of that term were defined or unless they were informed and told by the court what acts or conduct on the part of defendant amounted to an "acceptance" in law. The jury were not so informed by any instruction given to them in this case. In view of the state of the record herein, we are of the opinion that the issue or question of acceptance of the equipment was not intelligibly or clearly presented and submitted to the jury in such manner as would inform the jury or lead them to believe and understand that they were called upon to pass upon that issue. Such being the situation, we cannot accept the verdict of the jury as conclusive on the issue of acceptance. The issue of acceptance should be submitted with such clearness and certainty by the instructions that the jury will know and understand beyond a peradventure or doubt that they are called upon to decide that issue and they should be clearly told what acts and conduct of defendant constitute an acceptance of the goods.

Nor can we say upon the record before us, as a matter of law, that defendant must be held to have accepted the equipment. "An acceptance by the buyer implies a consent on his part to the receipt of the article and the seller therefore cannot, by leaving the article with the buyer after his refusal to receive the same, claim an acceptance; so if the buyer expressly refuses to accept the goods rendered, his permitting them to be placed on his premises for the mutual con-

venience of the parties cannot be considered an acceptance." [23 R. C. L. p. 1436, sec. 259; Courtney v. Knabe Mfg. Co., 97 Md. 499, 55 Atl. 614.]

One of defendant's officers testified that, upon being informed by Mr. Hugoniot, plaintiff's representative and agent, that the goods had been shipped, he told Mr. Hugoniot that plaintiff had no authority to ship the goods and that the order had been canceled. At that time, according to witness's testimony, defendant had received no shipping forms or bill of lading. The railroad carrier notified plaintiff, immediately on arrival of the goods at Vandalia, Illinois, that the goods were "refused because not shipped when ordered." Plaintiff thereupon telegraphed defendant that demurrage charges were accruing daily and advised defendant to accept shipment immediately in order to avoid additional expense. It appears that defendant took the goods from the railroad station platform to its warehouse, where they have since remained intact, without being used by the defendant. Contemporaneously with the taking of the goods to its warehouse, defendant wrote to plaintiff on October 28, 1918: "Referring to your letter of the 21st addressed to our Vandalia office, regarding the No. 8 blower.—As soon as we learned that this blower was not shipped on August 20th, as indicated in your Mr. Allen's letter of July 27th, we notified your Mr. Hugoniot, manager of St. Louis office, that we did not want the blower. Now, in order to prevent the accumulation of storage charges on this blower, we have instructed our Vandalia plant to take it in. This action upon our part, however, does not mean that we will accept the blower, because we will not. We are simply holding it subject to your order." The trial court excluded the letter when offered in evidence by defendant. We think the court erred in excluding the letter. It appears to have been written in answer to plaintiff's communications urging defendant to take the blower in order to minimize the loss and expense due to the accrual of demurrage or storage charges, and it advised plaintiff that, in order to prevent the accumulation of storage charges, defendant had instructed its Vandalia plant to take the blower, but that in doing so it was not the intention or purpose of defendant to accept the same and that defendant was holding the blower subject to the order of plaintiff. The letter appears to have been written and sent to plaintiff contemporaneously with the removal of the blower from the carrier's station platform to defendant's warehouse, and, as a contemporaneous writing or communication, it was, we think, properly admissible as a part of the *res gestae*. The ultimate fact of acceptance is ordinarily a question for the determination of the jury (35 Cyc. 262), and so we think it is in the instant case.

Other errors are assigned by appellant, but inasmuch as the giving of plaintiff's Instruction 3 constitutes reversible error, we find it un-

necessary to discuss the other assignments made by appellant. It follows that the cause must be reversed and remanded for retrial, and it is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves,* J., absent.